UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :

HENG CHAN, SHING TAO AU, YAN BIN CAO :
AI YIN CHEN, WAN ZHEN JIANG, FONG LI, :
JIAN YUN LIN, WEI CHAO TAN, FENG QIN :
ZHENG TANG, SUM KAY WONG, and YONG :
CAI ZHANG, :
                                          :

                    Plaintiffs, :        03 Civ. 6048 (GEL)
                                          :

                      v. :        **OPINION AND ORDER**
                                          :

TRIPLE 8 PALACE, INC., SUN YUE TUNG :
CORP. d/b/a 88 PALACE, KUNG TAK YEUNG :
KWOK MING CHAN a/k/a K.M. CHAN, :
GRACE CHAN, HANG LI, GUI YANG, GONG :
GUI GUAN, CHEUK HONG LAU, and YEUNG :
CHAO LO, :
                                          :

                    Defendants. :
-------------------------------------------------------------x

Mark S. Cheffo, Rachel B Passeretti, Kenneth
Schwartz, Angie Hardister, Melanie C. Falco,
Skadden, Arps, Slate, Meagher & Flom, LLP,
New York, NY; and Raymond Brescia,
Urban Justice Center, New York, NY, <u>for Plaintiffs</u>.

Daniel Hochheiser and Michael E. Sande,
Hochheiser & Hochheiser LLP, New York, NY,
<u>for Defendants Gui Yang, Kung Tak Yeung,</u>
<u>Yeung Chao Lo, Gong Gui Guan, Cheuk</u>
<u>Hong Lau, Hang Li, and Sun Yue Tung Corp.</u>

Leonard W. Wagman and David Lackowitz,
Snow Becker Krauss P.C., New York, NY, <u>for</u>
<u>Defendants Kwok Ming Chan, Grace Chan,</u>
<u>and Triple 8 Palace, Inc.</u>

GERARD E. LYNCH, District Judge:

Plaintiffs Heng Chan, Shing Tao Au, Yan Bin Cao, Ai Yin Chen, Wan Zhen Jiang, Fong Li, Jian Yun Lin, Wei Chao Tan, Feng Qin Zheng Tang, Sum Kay Wong, and Yong Cai Zhang ("plaintiffs") move for partial summary judgment against defendants Triple 8 Palace, Inc., Grace Chan, and Kwok Ming Chan ("Triple 8 defendants" or "Triple 8"), as well as against Sun Yue Tung Corp. (d/b/a 88 Palace), Gui Yang, Kung Tak Yeung, Hang Li, Gong Gui Guan, Cheuk Hong Lau, and Yeung Chao Lo ("88 Palace defendants" or "88 Palace"). Specifically, plaintiffs seek summary judgment on the question of liability with respect to their claims that defendants (1) illegally retained a portion of employees' tips received at banquets held at the restaurants; (2) illegally retained a portion of other, non-banquet tips received by plaintiffs; (3) failed to give proper notice to plaintiffs regarding minimum wage laws; (4) violated New York state's spread-of-hours provision; and (5) failed to compensate plaintiffs for uniform-related costs. The 88 Palace defendants cross-move for summary judgment, seeking dismissal of all claims against them. Both motions will be denied in their entirety.

## BACKGROUND

### I. The Parties

Plaintiffs are eleven Chinese immigrants who worked as waiters, busboys, and captains at a New York City Chinese restaurant formerly known as Triple 8 Palace, and now known as 88 Palace.[1] On August 8, 2002, defendants and former owners Kwok Ming Chan and Grace Chan

---

[1] Some of the plaintiffs continue to work at 88 Palace. (See 88 Palace Response to P. Local R. 56.1 Statement ¶ 1.) However, rather than shift back and forth from the present to past tense depending on the particular plaintiff or restaurant being discussed, the Court will, for the sake of readability, refer to all of plaintiffs' activities—as well as defendants' activities—in the past tense.

sold Triple 8 Palace to a group of investors, who changed the restaurant's name to 88 Palace. Investors in 88 Palace included the former president of Triple 8 Palace, defendant Kung Tak Yeung, as well defendants Gui Yang, Yeung Chao Lo, and Gong Gui Guan. Evidence in the record suggests that Dai Hai Nan purchased one half of one share in the restaurant, but defendants claim that he never owned any interest in the business. Defendant Cheuk Hong Lau was an employee at 88 Palace, and defendant Hang Li was an employee at both restaurants.

## II. Labor Practices at Triple 8 and 88 Palace

Plaintiffs received a regular hourly wage from 88 Palace of $3.30 if they were waiters or busboys, and $3.70 if they were captains. At Triple 8, they received approximately $3.30 in regular hourly wages.[2] At both restaurants, plaintiffs received additional compensation in the form of tips received directly from customers; tips were pooled and then distributed according to a predetermined formula among plaintiffs and other employees—including, at 88 Palace, Dai Hai Nan and defendant Gong Gui Guan. Plaintiffs also received a portion of a fifteen percent fee added to customers' bills for large parties and banquets held frequently at the restaurants. At 88 Palace, twenty-five percent of this fee would be retained by the restaurant after each banquet, and the remaining seventy-five percent would be distributed to plaintiffs and other employees. At Triple 8, the restaurant would keep $16,000 in banquet fees per month and distribute any remaining amount to the employees. Though these figures are not in dispute, the parties have entirely different theories regarding the proper characterization of the banquet fees for purposes

---

[2] Plaintiffs allege that prior to 1997, their hourly rages did not exceed $2.02, with busboys receiving as little as $1.20. (P. Mem. Summary Judgment at 13.) Post-1997 wage amounts are also disputed, but for purposes of the instant motion, plaintiffs concede that regular hourly wages were raised for all plaintiffs to at least $3.30 after 1997. (Id. at 14-15 & n.11.) Certain evidence in the record suggests that the amount may have been slightly more than $3.30 (see Kwok Ming Chan Affidavit Ex. D), but the minor difference is immaterial for purposes of the instant motion.

of minimum wage laws. Plaintiffs argue that the fees were variable, optional "tips," while both sets of defendants maintain that they were fixed, mandatory "service charges."[3]

Both of the defendant restaurants required their employees to wear uniforms during work hours, although the precise nature of this requirement is the subject of some disagreement. Triple 8 asserts, for example, that contrary to plaintiffs' claims, some of its employees, including its captains, wore their own clothing. The principal disagreement regarding the uniforms, however, pertains to whether the defendant restaurants maintained the uniforms for their employees as required by law. Plaintiffs allege that both restaurants failed to reimburse plaintiffs for uniform-related costs. Triple 8 contends that it provided sufficient uniform-laundering services; 88 Palace, in contrast, asserts that it was under no legal obligation to launder the uniforms or reimburse plaintiffs for uniform-related costs, because plaintiffs earned well in excess of the minimum wage.

Finally, the parties offer conflicting accounts of the restaurants' compliance with New York and federal statutes requiring employers to provide notice to employees of certain minimum wage guarantees. Plaintiffs argue that neither restaurant posted notice or otherwise informed employees as required under the relevant statutes. The Triple 8 defendants directly dispute this allegation, claiming that notice was posted at all times at Triple 8. The 88 Palace defendants argue primarily that they were not obligated to post notice of the minimum wage laws because plaintiffs earned in excess of the minimum wage even without tips.

---

[3] The Court's use of the term "fee" is intended to be neutral as between these competing characterizations, and should not be taken to imply a mandatory charge.

# DISCUSSION

The motions submitted by plaintiffs and 88 Palace[4] require the Court to consider five distinct issues with respect to each set of defendants: (1) whether defendants' retention of a portion of the banquet service fees violated state and federal laws providing that employees shall retain all of the tips they receive; (2) whether defendants violated these same provisions by allowing certain managers and part-owners to retain a portion of non-banquet tips that customers offered to plaintiffs during the regular course of business; (3) whether defendants violated state and federal laws requiring notice to employees of minimum wage guarantees; (4) whether defendants violated New York State's spread-of-hours provision; and (5) whether defendants violated New York law requiring employers to reimburse their employees for uniform-related expenses. On each of these issues, the moving party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Reid v. Aetna Life Ins. Co., 393 F. Supp. 2d 256, 264 (S.D.N.Y. 2005). "Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). The Court must view the record in the light most favorable to the non-movant and resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Reid, 393 F. Supp. 2d at 264.

---

[4] Triple 8 opposes plaintiffs' motion but does not file a cross-motion.

I.  Banquet Service Fees

    A.  Legal Standard

Federal and state laws require employers to pay employees a legally-prescribed minimum

hourly wage; current federal law sets the minimum at $5.15, while New York law sets the

minimum at $6.75.  See Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a)(1); N.Y. Labor

Law § 652(1).  Provided certain conditions are satisfied, however, an employer may "pay tipped

employees an hourly rate less than the federal minimum wage, by allowing them to credit a

portion of the actual amount of tips received by the employee against the required hourly

minimum wage."  Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228 (S.D.N.Y.

2002) ("New Silver Palace I").  Under federal law, an employer is eligible for this "tip credit" if

(1) the employer has informed the tipped employee of statutory requirements related to the tip

credit; and (2) "all tips received by such employee have been retained by the employee, except

that this subsection shall not be construed to prohibit the pooling of tips among employees who

customarily and regularly receive tips."  29 U.S.C. § 203(m) (emphasis added)[6]; see New Silver

---

[5]  A "tipped employee" is an employee "engaged in an occupation in which he [or she] customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).

[6]  Section 203(m) provides in relevant part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to–
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee.  The preceding 2 sentences shall

Palace I, 246 F. Supp. 2d at 228.  These prerequisites should be "strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."  Id. at 229.  Though New York state requirements are not structured identically, state law similarly allows employers to take a tip credit, see New York Labor Law § 652(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.4, but prohibits them from retaining for themselves any portion of employees' tips, see New York Labor Law §196-d.[7]  (Unlike federal law, however, New York law prohibits employers from retaining tips for themselves regardless of whether the employer takes a tip credit.)[8]

---

not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

[7]  Both federal and state law establish a maximum amount that employers relying on a "tip credit" may deduct from the hourly statutory minimum.  Put differently, the law establishes a minimum amount that employers must pay tipped employees in regular hourly wages, regardless of how much employees make in tips.  See 29 U.S.C. § 203(m); New York Labor Law § 652(4); New Silver Palace I, 246 F. Supp. 2d at 228; Davis v. B & S, Inc., 38 F. Supp. 2d 707, 711 n.4 (N.D. Ind. 1998).  These requirements are not at issue here.

[8]  New York Labor Law §196-d provides:

No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.  This provision shall not apply to the checking of hats, coats or other apparel.  Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

Not all supplemental payments for service, however, count as "tips" for purposes of the

foregoing provisions.  Most importantly for present purposes, the payment ordinarily must be an

optional "gift or gratuity" in order to be legally considered a "tip" for purposes of the FLSA.  29

C.F.R. § 531.52 ("A tip is a sum presented by a customer as a gift or gratuity in recognition of

some service performed for him. . . . Whether a tip is to be given, and its amount, are matters

determined solely by the customer . . . .").[9]  A similar understanding exists under New York law.

See, e.g., Weinberg v. D-M Rest. Corp., 53 N.Y.2d 499, 506-07 (1981) ("As to the employer the

test generally is whether the payment is a 'service charge' exacted by the employer or a

voluntary payment by the patron to the employee. . . .  'A tip is in law, if not always in fact, a

voluntary payment,'" quoting Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 4-5 (1960)).  Other

factors affecting whether a service payment is a tip may include the method of distributing the

payment, the customer's understanding of the payment, and the employer's inclusion of the

payment in its gross receipts.  See Reich v. ABC/York-Estes Corp., 91 Civ. 6265 (BM), 1997

WL 264379, at *5-*7 (N.D. Ill. May 12, 1997) (holding that five-dollar payments for "table

dances" at an exotic dance club were "tips," despite the fact that they were fixed minimum

---

[9]  See also Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1177 (7th Cir. 1987) ("The
plaintiffs concede that the service charge is not a tip, since it is not discretionary with the
customer."); United States v. Conforte, 624 F.2d 869, 874 (9th Cir. 1980) (observing that an
"essential element" of a tip is that it is a "voluntary payment in an amount, and to a person,
designated by the customer"); Matson v. 7455, Inc., 98 Civ. 788 (HA), 2000 WL 1132110, at *5-
*6 (D. Or. Jan. 14, 2000) (finding that the definitions in 29 C.F.R. §§ 531.52 and 531.55 "make
it abundantly clear that the fixed fees collected by the plaintiff in exchange for table dances are
not 'tips'"); United States v. Indianapolis Athletic Club, Inc., 818 F. Supp. 1250, 1253 (S.D. Ind.
1993) ("The discretion to refuse payment is an essential element of a tip or gratuity."); Rests. &
Patisseries Longchamps v. Pedrick, 52 F. Supp. 174, 174-75 (S.D.N.Y. 1943) ("The word 'tip' is
defined in Funk & Wagnalls' New Standard Dictionary as 'a sum of money given, as to a servant
usually to secure better or more prompt service.'  This connotes a voluntary act.  A patron in a
restaurant is under no compulsion to leave a 'tip.'").

payments, because the payments were made directly to the dancers rather than as a portion of a payment made to the employer, and because the employer did not include the payments in its gross receipts).[10]

Where service payments are not tips, they are not subject to the tip-credit restrictions imposed by federal and state law. Federal regulations provide that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]," and that where all or part of such "service charges" are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. 29 C.F.R. § 531.55(b). Thus, an employer may retain a portion of an employee's tips without running afoul of 29 U.S.C. §§ 203 and 206, so long as the compensation received by the employee from regular hourly wages and compulsory service charges exceeds the minimum amount specified in § 206(a). Under New York law, the provisions restricting employers from retaining employees' tips do not preclude employers from retaining part of a service fee added to the patron's bill, as long as the fee is a fixed charge and not a tip. N.Y. Labor Law § 196-d; see D-M Rest. Corp., 53 N.Y.2d at 506-07.[11]

---

[10] The Court need not decide whether a payment *must* in all circumstances be optional or voluntary in order to constitute a tip under the FLSA and New York law. As noted above, at least one case holds that a mandatory minimum fee may be a tip under federal law. See id. at *5-*6. It is clear, however, that a mandatory fee will only be deemed a tip in unusual circumstances. See cases cited supra note 9.

[11] The legal rules reflect a diversity of cultural expectations about how restaurant wait-staff should be compensated. For the most part, American practice reflects a tradition by which waiters and similar employees may be paid relatively low wages, prices to customers are thus lowered by the reduction in the owners' labor costs, and the staff is paid additional sums (based presumably on quality of service) directly by the customers. In the European tradition, customers pay a fixed amount for service directly to the establishment (whether included in the gross price of the food or added as a separate fixed charge), and the waiters are compensated by higher wages from the employer. See, e.g., Laura Bly, The Tipping Point, USA Today, Aug. 26,

Plaintiffs allege that defendants violated these provisions by retaining a portion of the service fees—which plaintiffs characterize as "tips"—that were added to the bill for banquets and large parties. Whether plaintiffs are correct depends on whether the service fees added to banquet bills are properly understood as "tips" belonging to employees or "service charges" belonging to the employer. 29 C.F.R. § 531.55. If the banquet service fees were "tips," federal law prohibited defendants from retaining any portion of them if defendants also relied on the "tip credit" to satisfy the minimum wage. 29 U.S.C. § 203(m). Under state law, defendants were barred from collecting a portion of plaintiffs' tips or ("gratuities") no matter how the minimum wage requirement was satisfied. N.Y. Labor Law § 196-d.

B. Plaintiffs' Claims Regarding Banquet Service Fees at 88 Palace

To demonstrate that the banquet fees at 88 Palace were "tips" and not "service charges," plaintiffs point to deposition testimony in which, according to plaintiffs, defendants conceded that the fees were optional. Plaintiffs also note that the 88 Palace menus, as well as internal company documents, described the fees as "tips"; that the fees were never included in 88 Palace's gross receipts or total sales; and that 88 Palace did not pay taxes on the fees. Citing various inconsistencies in defendants' arguments regarding their accounting and payment practices, plaintiffs also suggest that the inconsistencies can be resolved only if the banquet payments are understood as tips belonging to the employees. None of the evidence cited by plaintiffs is decisive, however, and factual disputes about each of these issues make it possible for a reasonable fact-finder to reject any or all of plaintiffs' arguments.

---

2005 at 1D; Steven A. Shaw, Op-Ed., Tipped Off, N.Y. Times, Aug. 10, 2005, at A21. New York and federal minimum wage laws allow for either system.

## 1. <u>Deposition testimony regarding the optional nature of the fees</u>

Plaintiffs rely on the testimony of defendant Yeung Chao Lo, who, when asked whether "the 15 percent that is added is optional, based on the quality of the service . . . and other factors," answered, "That's right."  (Yeung Chao Lo Dep. 119:25 to 120:11.)  Certainly, a reasonable fact-finder could decide that this testimony supports plaintiffs' claim.  The testimony does not compel a ruling for plaintiffs, however.  As defendants note, Yeung Chao Lo's testimony, read as a whole, might be understood as indicating only that customers would sometimes pay less than the required amount *despite the fact that the fees were mandatory*.  In other words, just as occasionally a disgruntled customer might refuse to pay the entire bill, a customer might refuse to pay the full service fee.  Such customer protests do not make payment "optional" for purposes of determining whether a payment is a tip or a service charge.

Plaintiffs also cite the testimony of defendant Gui Yang, who testified that "[o]f the tips [from banquets], 75 percent were shared by captain and waiters and the 25 percent was kept by the company as service charge."  (Gui Yang Dep. 33:9-11.)  Contrary to what plaintiffs allege, this ambiguous testimony is not a concession that "the banquet fees were really tips."  (P. Mem. Summary Judgment ("P. Mem.") at 31.)   It appears from the transcript that Gui Yang's use of the word "tips" may have been prompted by the attorney questioning him.  More importantly, the defendant's testimony evinces a failure to distinguish properly between tips and service charges; according to Gui Yang, twenty-five percent of the "tips" were "service charge[s]."  (Gui Yang Dep. 33:9-11.)

Defendants, moreover, have come forward with sufficient testimonial evidence of their own to create a genuine issue of material fact.  Defendant Gui Yang, for example, referred to the

banquet fees as "tips" but testified at his deposition that customers "have to pay" the fee in the amount of fifteen percent of the bill. (Gui Yang Dep. 18:6-7.) And plaintiff Wei Chao Tan repeatedly conceded at his deposition that customers were "required" to pay the banquet fees, though he also referred to the payments as "tips." (Wei Chao Tan Dep. 11:11 to 12:20.) When considered in light of other evidence in the record, the testimony cited by defendants suffices to defeat plaintiffs' claim that alleged concessions in defendants' testimony eliminate any genuine issue of material fact regarding whether the fees were optional.

2. The use of the word "tips" on menus and corporate documents

Plaintiffs make much of the fact that the 88 Palace menus and internal company documents refer to the banquet service fees as "tips," and a reasonable fact-finder could find that this evidence weighs in plaintiffs' favor. But as plaintiffs concede elsewhere in their brief, the Court should not at this stage rely on mere "nomenclature" in determining whether a payment constituted a service charge or a tip (see P. Mem. at 38), particularly in light of the fact that a reasonable lay person or restaurant professional might not even understand the difference between the two terms' legal definitions. (See Miu Dep. 68:21 to 69:4.)

In any event, much of the evidence on which plaintiffs rely is much more ambiguous than they would have the Court believe. Plaintiffs argue, for example, that "88 Palace's corporate witness, Gui Yang, conceded that the menus describe the banquet fees as 'tips.'" (P. Mem. at 29.) The cited portion of the deposition, however, lends only equivocal support to that claim. Gui Yang agreed that the menu says "tips," but he also pointed out that the menu says "that [customers] *have to pay* additional 15 percent tips." (Gui Yang Dep. 18:6-7 (emphasis added).) In response to a follow-up question, he added: "[T]hat's for customers so that they understand

12

they have to pay the 15 percent *service charge*." (Id. at 18:9-11 (emphasis added).) Moreover, the word appearing on the menu is not actually the English word "tips," but a Chinese character which apparently means "tips." (Id. at 19:5-8; see 88 Palace Mem. Opposition and Cross-Motion for Summary Judgment ("88 Palace Mem.") at 7-8; see also 88 Palace Response to P. Local R. 56.1 Statement at ¶ 11.) Distinguishing between the terms "service charge" and "tip" causes confusion even in English, and the difficulty of translation from Chinese can only exacerbate the problem. (See also id., arguing that the Chinese character for "tip" "may be subject to varying interpretations.")[12] Plaintiffs do not provide sufficient assurance that the Chinese character that witnesses translated as "tips" carries the same meaning and connotations that distinguish the English word "tip" from "service charge."[13]

---

[12] See also the deposition of plaintiff Shing Tao Au, in which he explained that the term "service charge" was new to him, and that he interpreted it to mean "tips." (Shing Tao Au Dep. 25:25 to 26:14.) "Service charge is tips," he said. (Id. at 26:14.)

[13] Citing several advisory letters from the New York Department of Labor, plaintiffs also argue that "if a patron is told that a fee is a tip, or a gratuity, the fee collected must be paid in full to the tipped employees." (P. Mem. at 30.) The letters do in fact provide that any fees that the employer "specifically denominate[s] as a 'gratuity'" must be paid to the employees. But the letters do not specifically refer to the word "tip"; much less do they refer to the Chinese character which witnesses in the instant case have translated as "tip." Moreover, when read as a whole, the letters appear to be concerned not primarily with the details of word choice, but with the impression created in the customers' minds. (See, e.g., Letter from N.Y. Dep't of Labor (Mar. 26, 1999), providing that if the employer "lead[s] the patron who purchases a banquet . . . to believe that the contract price includes a fixed percentage as a gratuity, then that percentage of the contract price must be paid in its entirety to the waiters, busboys and 'similar employees.'"; Cheffo Dec. Ex. 50.) An employer might therefore be in compliance with the law as interpreted by these letters, even if it uses the word "gratuities" on the menu, so long as the restaurant's procedures or policies make clear to customers that the banquet service fees are charges belonging to the employer. To the extent the Department of Labor letters can be read as requiring that all payments ever designated "gratuities" on a menu be treated in all circumstances as "tips" or "gratuities" for purposes of New York minimum wage requirements, the letters do note cite any statute or regulation to support that position.

None of this is to say, of course, that the use of the Chinese character for "tips" must be irrelevant to a reasonable fact-finder. The Court only holds that 88 Palace's choice of words on

The use of the word "tip" on 88 Palace's internal financial worksheets weighs more heavily in favor of plaintiffs' claims, not only because the word appears in English, but also because some of the documents clearly distinguish between service charges and tips, and describe employees' portion of the banquet fees as "75% Tips Paid." (Cheffo Dec. Ex. 20.) Though the Court agrees with plaintiffs that this evidence seriously undercuts defendants' contention that the entire banquet fee was a "service charge," in light of the conflicting evidence offered by defendants the internal worksheets are not enough, either alone or taken with other available evidence, to entitle plaintiffs to summary judgment.

### 3. The failure to report the payments as part of gross receipts

The gross-receipts issue presents a more difficult question. Relying primarily on district court opinions from Texas and Illinois, plaintiffs argue that in order to establish that the banquet fees were "service charges," 88 Palace must demonstrate that it reported the entire party fee to the government as part of the restaurant's gross receipts. See ABC/York-Estes Corp., 1997 WL 264379, at *5-*6; Reich v. Priba Corp., 890 F. Supp. 586, 595 (N.D. Tex. 1995). Plaintiffs present evidence that 88 Palace not only failed to include the banquet fees when reporting gross receipts to the government, but also that defendants grossly understated their gross receipts in government reporting more generally. Defendants, in response, argue that the law only requires that employers include service charges in internal calculations of gross receipts in order to avoid that they be classified as tips; the FLSA, defendants argue, does not impose a *tax reporting* requirement on service charges.

The district court opinions on which plaintiffs rely contain language supporting their

_____

its Chinese menus does not, in light of other evidence, justify summary judgment in plaintiffs' favor.

argument. In <u>Priba Corp.</u>, the district court considered whether payments made to topless dancers for "table dances" at an adult entertainment club constituted "tips" for purposes of the FLSA, and concluded that "[t]he fact that all of the table dance fees [were] not reported as gross receipts [was] fatal to [defendants'] claim that the tips [were] more properly classified as wages." 890 F. Supp. at 595. In another case involving table dances at an adult entertainment establishment, an Illinois district court adopted the <u>Priba Corp.</u> analysis, and held that "an employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA." <u>ABC/York-Estes Corp.</u>, 1997 WL 264379, at *5, *7. The Court ruled against the defendants in <u>ABC/York-Estes Corp.</u>, noting that there was "no indication in the record that the table dance fees [were] reported in defendants' gross receipts." <u>Id</u>. at *7. Even if the <u>Priba Corp.</u> and <u>ABC/York-Estes Corp.</u> holdings were binding on this Court, however, their facts are sufficiently distinct from the facts of the instant case that they would not compel a ruling for plaintiffs.

First of all, the courts in <u>Priba Corp.</u> and <u>ABC/York-Estes Corp.</u> did not rely exclusively on the failure to report the payments as gross receipts in concluding that the payments were service charges rather than tips. Several other factors militated in favor of a finding that the payments were not service charges belonging to the employer, but rather tips belonging to the employee. In <u>Priba Corp.</u>, for example, the patrons made the table dance payment directly to the dancers; the dancers kept the entire amount if paid in cash, defendants kept *no* record of the number of dances or the amount of table dance payments earned; and there was an express agreement between dancers and the employer that "'Priba shall have no right to any portion of cash sales or tips received,'" and that Priba would retain only a twenty percent processing fee for

15

payments made by credit card or voucher. Priba Corp., 890 F. Supp. at 594-95. In ABC/York-Estes Corp., patrons also made the table dance payments directly to the employees; the employees were under "no obligation" to remit the payments to the employer, other than a fixed "shift fee" which did not vary in relation to the number or duration of table dances; and the employer did not keep a record of the table dance fees collected or of the number of table dances performed. ABC/York-Estes Corp., 1997 WL 264379, at *5-*7. Thus, in these cases, the moneys paid to the dancers were not only not *reported* to the government as part of the gross receipts of the employer; they never even became part of those receipts, because for the most part they were received and retained by the dancers.

Here, in contrast to both Priba Corp. and ABC/York-Estes Corp., customers paid the banquet fees as a portion of a larger payment made to the employer, and employees were not given any personal control over their portion of the fee until the *employer* paid it to them. Moreover, despite 88 Palace's apparent failure to fully report the payments to the government, the parties agree that defendants maintained meticulous records of the amount of banquet service fees paid to the employer as part of the bill, which suggests that the employer considered the charges to be payments belonging to the business, rather than tips belonging to employees. (See 88 Palace Mem. at 6; P. Mem. at 33.)

Finally, despite language in Priba Corp. and ABC/York-Estes Corp. suggesting that employers must include service charges in their reporting of gross receipts in order to avoid a finding that the fees are "tips," nothing in either opinion suggests that the courts would apply that general rule to a case in which a defendant's failure to report service payments was just one part of a more generalized failure to comply with tax reporting requirements. In the absence of

any indication to the contrary in the courts' opinions, it seems reasonable to assume that the defendants' reporting failures in both Priba Corp. and ABC/York-Estes Corp. were specific or unique to the table dance payments at issue. Here, in contrast, the Court is not confronted with a defendant who allegedly reported all of its income except the banquet fee; rather, 88 Palace appears simply to have failed to report its income properly, and there is nothing to suggest that the restaurant treated the banquet service fees differently from other unreported or under-reported payments that were unquestionably non-tip income belonging to the employer. (See id., noting that "only about one of every two dollars collected by 88 Palace, *from any source*, is included in its gross receipts and reported to the government" (emphasis added).) To the extent that the restaurant may simply have been cheating the government of taxes by failing to report receipts that were clearly income of the employer, the failure to report the banquet service fees as part of gross receipts does not compel the conclusion that the fees were tips for purposes of the FLSA.[14]

The Court stresses, however, that a fact-finder could reasonably conclude that 88 Palace's failure to include banquet fees when reporting gross receipts undermines its claim that the fees were service charges. See Chan v. Triple 8 Palace, 03 Civ. 6048 (JCF), 2005 WL 1925579, *8 (S.D.N.Y. Aug. 11, 2005) ("[T]here is substantial evidence that the 88 Palace Restaurant treated the additional charges imposed on banquet customers as employee tips rather than as a service charge belonging to the restaurant. For example, these monies were not

---

[14] For substantially the same reasons, the Court rejects the argument — which plaintiffs make only in passing — that defendants' failure to comply with other federal tax reporting and withholding requirements compels a ruling in plaintiffs' favor. If defendants failed to account for service fees in tax reporting and withholding, that may suggest that the fees were tips, but it may also suggest that defendants simply violated the tax laws. It is up to the fact-finder to determine the proper explanation for the alleged reporting deficiencies.

reported in 88 Palace's gross receipts nor were they included as wages in the employees' W-2 tax forms."). If the banquet fees were truly service charges, they should have been included in the restaurant's gross receipts for accounting and tax purposes. If they were not, that is circumstantial evidence that defendants did not actually regard the fees as service charges, but rather as tips. That, however, is a factual inference (and, moreover, one that is arguably weakened by the fact that defendants' reporting of *other* receipts may also have been lacking), not a rule of law, and it is left to the fact-finder to resolve. Even if the evidence in favor of plaintiffs is "substantial," id., plaintiffs have failed to demonstrate the absence of a genuine issue of material fact.[15]

Federal regulations do not undermine this holding. In providing examples of payments that are not tips, the regulations explain that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of" the FLSA. 29 C.F.R. § 531.55. The regulations do not purport to create a rule, however, that any sum given to a tipped employee that is not included in reported gross receipts must always be considered a tip. Service charges taken in by the employer may "become part of the employer's gross receipts" for purposes of 29 C.F.R. § 531.55, even if they are not *reported* as such on the employer's tax returns. The regulations may not be reasonably read as providing that a restaurant employer who generally fails to properly report gross receipts is liable to a finding that any and all unreported

---

[15] In support of their gross-receipts argument, plaintiffs also cite, but do not discuss, Bonham v. Copper Cellar Corp., 476 F. Supp. 98 (E.D. Tenn. 1979), and Melton v. Round Table Restaurants, Inc., Civ. 14112 (Smith), 1971 WL 900 (N.D. Ga. Nov. 8, 1971). While the latter decision contains dictum supporting plaintiffs' argument regarding gross receipts, the case is distinguishable for essentially the same reasons that distinguish Priba Corp. and ABC/York-Estes Corp. See Melton, 1971 WL 900, at *4. Bonham presents an entirely different factual scenario and provides no support to plaintiffs' gross-receipts argument. See Bonham, 476 F. Supp. at 100-02.

payments to employees are "tips."[16]

### 4. Inconsistencies in defendants' arguments regarding accounting and payments

Plaintiffs point to various inconsistencies in defendants' arguments regarding accounting and payment practices, and suggest that the inconsistencies can only be resolved if the banquet fees are understood as tips.

Defendants' representations regarding overtime pay present one example. Defendant Gui Yang testified that when paying one-and-a-half times the regular pay to employees working over forty hours, as required by 29 U.S.C. § 207(a), 88 Palace calculated the overtime pay by using the $3.30 hourly wage as the "base" pay, leading to an overtime pay of $4.95 per hour. (Gui Yang Dep. 85:18 to 88:10.); see 29 U.S.C. § 207(a) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); id. § 207(e) (defining "regular rate" as "*all* remuneration for employment paid to, or on behalf of, the employee," with the exception of certain forms of payment specifically defined in the statute, such as gifts, end-of-year bonuses, and stock options (emphasis added)). In other words, 88 Palace did not include the banquet service charges as part of the "regular rate" subject to increase for overtime. In their summary judgment brief, however, defendants insist that a proper calculation of plaintiffs'

---

[16] Though plaintiffs' allegations—as well as some evidence in the record—present the possibility that 88 Palace and Triple 8 violated certain laws related to overtime pay, tax reporting, and other accounting practices, see, e.g., Parts I.B.3, I.B.4, I.D.3, and I.D.4, the Court need not and does not address whether such violations actually occurred. The Court notes only that *if* such violations occurred, they might explain some of the evidence on which plaintiffs attempt to rely to demonstrate violations of the minimum wage requirements set forth in 29 U.S.C. §§ 206(a) and 203(m) and New York State Labor Law § 196-d.

hourly wages *would* include the service charge payments distributed to employees.  (88 Palace

Mem. at 8-11.)  Defendants do not explain how they can avoid calculating overtime based on a

regular rate that excludes the service charge payments if those payments are properly considered

part of the hourly wage.[17]

The 88 Palace defendants also present inconsistent arguments regarding whether they

took advantage of the "tip credit" to satisfy their obligations under federal and state labor law.

In their summary judgment papers, the 88 Palace defendants dispute that they had any need for

the tip credit, because if the service charges are understood as wages, plaintiffs receive above

minimum wage even without tips.  (See id. at 10-11.)  Defendant Gui Yang's testimony,

however, contradicts this representation.  When asked at his deposition how the company could

pay $3.30 per hour to waiters and busboys and $3.70 per hour to captains even though the

minimum wage was $5.15, Gui Yang explained: "Because their income includes tips, they

earned tips, and when one adds tips to their pay it exceeds the minimum."  He added: "The

company only pay the base pay and the rest they made from tips."  (Gui Yang Dep. 86:5-7, 87:7-

8.)

The inconsistencies highlighted by plaintiffs certainly bolster their case, both by

suggesting strongly that defendants considered the banquet service payments to be tips, and by

generally impeaching the credibility of defendants' arguments.  The inconsistencies do not,

---

[17]  Furthermore, despite defendants' insistence in their brief that the service charges distributed
to plaintiffs formed part of the wages, a witness designated by defendants pursuant to Fed. R.
Civ. P. 30(b)(6), Louis Miu, stated precisely the opposite at his deposition. "[T]he part of the
service charge that you give out to the employees," Miu explained, "is not considered as wages."
(Miu Dep. 110:9-13.)  Later in the deposition, Miu admonished that the attorney questioning him
was "confusing service charges with the wages now; they are not to be confused."  (Id. at 125:25
to 126:3.)

however, show the absence of any issue of material fact, even when considered with the other evidence in plaintiffs' favor. First of all, though it would seem odd to establish a defense to one claim by conceding violation of a separate statutory provision, it is possible that the overtime issue can be explained simply by defendants' failure to comply with overtime laws, just as defendants' failure to report the banquet fees could be explained by a violation of tax reporting requirements. See supra Part I.B.3. Moreover, inconsistencies or confusion in witness testimony might result from the difficulty—particularly for lay persons and non-native speakers of English—of distinguishing between "tips" and "service charges." Thus, when Gui Yang explained that "[t]he company only pay[s] the base pay and the rest they made from tips," his statement could be taken as reflecting confusion as to what constitutes a "tip"—or even confusion regarding what constitutes "base" pay—rather than a concession that 88 Palace needs to rely on the tip credit to satisfy minimum wage laws.

Unquestionably, the evidence discussed here and in the preceding subsections raises serious doubts about the plausibility of defendants' arguments. Summary judgment, however, is not warranted unless *no* reasonable fact-finder could reach a contrary result. See Magan v. Lufthansa German Airlines, 339 F.3d 158, 161 (2d Cir. 2003). If all reasonable inferences are drawn in favor of the 88 Palace defendants, it cannot be said that they have failed to raise a genuine issue of material fact about the nature of the banquet fees.[18]

---

[18] This is particularly so in light of plaintiffs' failure to demonstrate conclusively that the banquet service fees were voluntary and optional. The optional nature of a payment is ordinarily of central importance in determining whether the payment is a tip. See cases cited supra note 9. In view of plaintiffs' inability to show an absence of material fact with regard to that issue, the other evidence in the record—regarding internal company documents, gross receipts, and other matters—would have to be particularly compelling to justify a ruling at the summary judgment stage that the banquet fees were tips. While the additional evidence provides some support to plaintiffs' argument, it does not overcome their failure to show the absence of a genuine issue of

C.  88 Palace's Claims Regarding Banquet Service Fees

The 88 Palace defendants also seek summary judgment on the issue of the banquet service fees, arguing that the fees, as a matter of law, should be considered service charges belonging to the restaurant.  The Court need not address 88 Palace's arguments in quite the same detail as it addressed plaintiffs' motion for summary judgment on the same question, because the preceding subsections already set forth much of the evidence that supports plaintiffs' claims and that thereby creates a genuine issue of material fact.  88 Palace defendants, for example, have referred to the fees as "tips" on menus and in corporate documents, and they have failed to report the fees as part of their gross receipts.  Moreover, the finder of fact will be entitled to draw an adverse inference against 88 Palace based on defendants' destruction of documents that may have shown that defendants treated the service fees as tips.  See Triple 8 Palace, 2005 WL 1925579, *9-*10.[19]  Under these circumstances, defendants' motion for summary judgment demonstrates more bravado than merit.

None of the arguments in 88 Palace's brief compel a different conclusion.  Defendants cite the deposition testimony of plaintiff Feng Qin Zheng Tang to support the proposition that the banquet service fees were mandatory, but the testimony establishes no such thing.  On the contrary, when asked whether banquet customers could refuse to pay the fifteen percent fee, the plaintiff responded, "Some will."  (Feng Qin Zheng Tang Dep. 72:16-19.)  To demonstrate that the charges belonged to the employer, defendants rely on defendant Hang Li's testimony that

_____

material fact about whether the fees were voluntary.

[19]  Magistrate Judge Francis held that the "most appropriate sanction" for the destruction of evidence in this case "is to allow the finder-of-fact to consider the gravity of defendants' conduct, the materiality of the evidence that was lost, and the import of the remaining proof, and to draw an adverse inference against the defendants."  Id., at *10.

service charges were paid directly to him, and not to the employees. (Hang Li Dep. 33:12-20.) Another witness provided by defendants, however, testified that the portion of service charge payments made to employees was paid out to them "immediately." (Miu Dep. 122:5-8.).[20]

The 88 Palace defendants also argue that so long as plaintiffs' total compensation, including tips, exceeded the statutory minimum wage, when measured by a weekly standard, plaintiffs cannot establish a violation of 29 U.S.C. §§ 203(m) or 206(a). Such a rule cannot be reconciled with the language of § 203(m), which clearly prohibits employers from confiscating *any* portion of employees' tips if the employers rely on the tip credit to satisfy the minimum wage. Courts have consistently rejected arguments similar to defendants' for precisely this reason. See, e.g., Reich v. Chez Robert, 28 F.3d 401, 404 (3d Cir. 1994) (holding that the requirements of § 203(m) may not be waived by the district court to account for compensation actually received in the form of tips); Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1323 (1st Cir. 1992) ("It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit . . . ."); New Silver Palace I, 246 F. Supp. 2d at 229 ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."). The cases on which defendants rely for the contrary position are inapposite to the instant case, because none of them involved enforcement of §

_____

[20] 88 Palace also offers evidence that the fifteen percent fee was discussed with customers before banquets, arguing that "a restaurant typically does not discuss an optional 'tip' with its customers prior to the occasion." (88 Palace Mem. at 5.) The Court agrees that this is not "typical[]," but that is not, of course, the standard for summary judgment.

203(m).  See Adair v. City of Kirkland, 185 F.3d 1055 (9th Cir. 1999); Rogers v. City of Troy, 148 F.3d 52 (2d Cir. 1998); Hensley v. MacMillan Bloedel Containers, 786 F.2d 353 (8th Cir. 1986); Dove v. Coupe, 759 F.2d 167 (D.C. Cir. 1985); Blakenship v. Thurston Motor Lines, Inc., 415 F.2d 1193 (4th Cir. 1969); Wirtz v. Hebert, 368 F.2d 139 (5th Cir. 1966); United States v. Klinghoffer Brothers Realty Corp., 285 F.2d 487 (2d Cir. 1960); Caci v. The Wiz of Lake Grove, 267 F. Supp. 2d 297 (E.D.N.Y. 2003).

D.  Plaintiffs' Claims Regarding Banquet Service Fees at Triple 8

As in their case against 88 Palace, plaintiffs attempt to prove that they are entitled to summary judgment against Tripe 8 on the issue of whether the service fees collected at Triple 8's banquets were "tips."  As in the case of 88 Palace, plaintiffs fail to demonstrate the absence of genuine issues of material fact.

The arguments on which plaintiffs rely are similar to those they make in the 88 Palace case.  They argue that defendants have conceded in deposition testimony that the fees were optional; that internal company documents describe the fees as "tips"; that the fees were never included in Triple 8's gross receipts or total sales; and that inconsistencies in Triple 8's arguments undermine its claim that the fees in question were service charges.  While some of the evidence supports plaintiffs' position, they are not entitled to judgment as a matter of law.

1.  Deposition testimony regarding the optional nature of the fees

Plaintiffs rely on deposition testimony of various witnesses to show that the banquet service fees were optional, but the testimony in question is ambiguous at best.  For example, although plaintiffs claim that defendant Kwok Ming Chan testified "that the party fees were variable," the cited portion of the testimony could just as easily be read as indicating that the

service fee was a fixed mandatory minimum, and that customers would "sometimes" pay more when they were "very pleased." (Kwok Ming Chan Dep. 379.) The fact that customers sometimes add an additional amount to a mandatory charge does not convert the entire charge into a tip. Moreover, even though Kwok Ming Chan acknowledged that customers might pay more, he also maintained that the charge "was always 15 percent." (Id. at 378:23 to 379:4.)

Some of plaintiffs' testimony further calls into question whether the banquet service fees were optional. Plaintiff Wan Zhen Jiang, for instance, testified that customers did not have a right not to pay the fifteen percent fee. (Wan Zhen Jiang Dep. 97:22-25.) Plaintiff Shing Tao Au's testimony, while more ambiguous, also suggests that the payments were mandatory. (Shing Tao Au Dep. 25:4-14.) In light of the inconsistencies among (and within) the testimony of various witnesses, the Court cannot determine as a matter of law whether the service charges at Triple 8 Palace were compulsory or optional.

## 2. The use of the word "tips" on corporate documents

As in the case against 88 Palace, plaintiffs rely on corporate financial information and other documents produced by the restaurant to demonstrate that the service fees formed part of plaintiffs' tips. The evidence on which plaintiffs rely, however, is simply not clear enough to support summary judgment.

Several of the documents cited by plaintiffs are not even written in English (see Cheffo Dec. Exs. 40, 41; see also Kwok Ming Chan Dep. 356:17-19), and thus present the same translation problems noted above, see supra Part I.B.2. Moreover, plaintiffs have conceded, for purposes of their summary judgment motion, that the menus at Triple 8 Palace used the term "service charge" rather than "tip," at least beginning in 1997. (P. Mem. at 38.) Finally, though

some of the English-language documents cited by plaintiffs describe plaintiffs' pay only in terms of wages and "tips," it is for the fact-finder at trial to determine whether this reflects carelessness and confusion in distinguishing "tips" and "service charges" (or failing to so distinguish) in official records and letters, or whether it reveals that defendants actually understood the payments to be tips and treated them as such in the course of business. (See Cheffo Dec. Ex. 32.)

      3.   <u>The failure to pay taxes on the payments or report them as gross receipts</u>

Plaintiffs' reliance on Triple 8's alleged failure to comply with various reporting and tax requirements, including its failure to include the service fees in gross receipts, is not enough to warrant summary judgment, primarily for reasons already described in Part I.B.3, <u>supra</u>. Plaintiffs acknowledge that Triple 8's alleged violations of tax reporting requirements, like 88 Palace's violations, extended beyond its failure to include service charges in gross receipts. (See, e.g., P. Mem. at 43; P. Rely to Triple 8 at 9.) Though plaintiffs believe that these reporting deficiencies weigh in their favor, this is not necessarily the case. If the Triple 8 defendants did not treat banquet service fees differently from other income that they may have improperly failed to report, the reporting failures with respect to the banquet payments need not support an inference that those payments were tips. Whether and to what extent defendants' reporting and accounting practices support plaintiffs' position is a question of fact for the jury, not a question of law to be determined by summary judgment.

      4. <u>Inconsistencies in defendants' arguments regarding accounting and payments</u>

Various inconsistencies and contradictions in plaintiffs' arguments and evidence undermine both defendants' credibility and the substance of defendants' arguments. Again,

however, such evidence is for the fact-finder to weigh and is not enough to entitle plaintiffs to summary judgment against Triple 8.

Defendants' claim that the service fees were not tips is undermined, for example, by the fact that Triple 8 did not count service charge payments when calculating the overtime rate. A document attached to defendant Kwok Ming Chan's affidavit reveals that the overtime rate was $5.24, which is approximately 1.5 times a regular rate of $3.49. (Ming Dep. Ex. D.) Defendants do not explain how they could use $3.49 as the regular rate in an overtime calculation if plaintiffs' regular non-tip compensation, including their portion of the service fees, was well over that amount. It is possible, of course, that the service charges were not tips and that defendants were simply in violation of overtime laws. It is the duty of the fact-finder, however, to determine the proper explanation for the inconsistency.

Another inconsistency arises in the Triple 8 defendants' representations regarding the tip credit. In their summary judgment opposition, the Triple 8 defendants acknowledge that they relied on a "tip credit" to satisfy minimum wage laws, in accordance with 29 U.S.C. § 203(m) and New York Labor Law § 652(4). (See Triple 8 Mem. Opposition to Summary Judgment ("Triple 8 Mem.") at 9.) If defendants are correct that the service fees did not count as "tips," however, then there was no reason for them to rely on the tip credit, because the total non-tip compensation to plaintiffs would have far exceeded the statutory minimum, at least according to the documents submitted by Triple 8. (See Affidavit of Kwok Ming Chang Ex. B.) Thus, either the service fees *were* indeed tips, contrary to defendants' representations, or defendants have

misunderstood the law and relied unnecessarily on the tip credit. Though the former seems more likely at this stage, the evidence does not entitle plaintiffs to judgment as a matter of law.[21]

## II. Sharing of Non-Banquet Tips

### A. Legal Standard

Plaintiffs allege that in addition to retaining illegally a portion of the banquet service fees, both sets of defendants illegally retained some of the tips received by employees while the employees were working ordinary restaurant shifts, as opposed to banquet shifts.

At the outset it is important to clarify some possible confusion regarding who may and may not retain employees' tips under New York and federal law. Plaintiffs are correct that they are entitled to summary judgment on the state law claim if they establish as a matter of law that "employers" or employers' "agents" counted among those dipping into the tip pool, and that a similar standard applies under federal law if the employer took advantage of the tip credit. See New Silver Palace I, 246 F. Supp. 2d at 221-22; Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 307-08 (S.D.N.Y. 1998). (Thus, with regard to the banquet service fees discussed in the preceding section, plaintiffs are correct that the employing restaurants' conceded retention of service fees was illegal if the fees were actually tips.) It is unclear whether plaintiffs and defendants recognize, however, that the restrictions on tip sharing extend beyond "employers" and "agents." Read as a whole, the briefs of all three parties suggest an erroneous view that tip

_____

[21] Relying on Indianapolis Athletic Club, defendants maintain that their retention of a portion of the payment provides evidence that it was not a tip. See 818 F. Supp. at 1253 ("The second factor which indicates that the disputed payments were wages is that the IAC did not convey the service charge directly to the wait staff without deduction."). Defendants' reasoning is circular, and would allow them to justify a violation of tip-sharing restrictions by engaging in the very activity that is prohibited. The court in Indianapolis Athletic Club did not need to consider this possibility, because that case did not involve a tip credit. Morever, the positions in that case were reversed; the _plaintiff_ was arguing that the payment at issue was a wage. Id. at 1251.

sharing by an "employer" or employer's "agent" is not only *sufficient* to demonstrate illegal tip sharing, but that it is *necessary*.  (See, e.g., P. Mem. at 45; Triple 8 Mem. at 19, 23; P. Mem. Reply to Triple 8 at 13; 88 Palace Mem. at 13-14, 16; P. Mem. Reply to 88 Palace at 20-21.) However, both New York law and the FLSA provide somewhat broader protections.

The FLSA provides that if an employer takes advantage of the tip credit, "all tips" received by an employee must be retained by that employee, or, if shared by means of a tip pool, the tips must only be shared "among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).  In other words, employers are not merely barred from taking the tip credit if *they* share in the tip pool, but they are barred from taking the tip credit if *any person* who does not "customarily and regularly receive tips" shares in the tip pool.  Id.; see Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 300 (6th Cir. 1998) (noting that 29 U.S.C. § 203(m) "only permits tip pooling among employees who customarily and regularly receive tips" (citation and internal quotation marks omitted)); Zhao v. Benihana, Inc., 01 Civ. 1297 (KMW), 2001 WL 845000, at *1-*2 (S.D.N.Y. May 7, 2001) (holding, in a dispute regarding notice to potential class members, that plaintiff had sufficiently alleged a violation of 29 U.S.C. § 203(m), where plaintiff alleged that she was required to share her tips with "kitchen helpers"); Davis v. B & S, Inc., 38 F. Supp. 2d 707, 714-15 (N.D. Ind. 1998) ("[T]he employer may still take advantage of the tip credit for employees who participate in a tip pooling agreement, so long as those employees are employees who 'customarily and regularly receive tips,'" quoting 29 U.S.C. § 203(m).); Letter from Dep't of Labor, Wage and Hour Div. (Nov. 4, 1997), 1997 WL 998047 ("[T]he FLSA requirement that tipped employees retain all tips does not preclude a valid[] tip-pooling arrangement among employees who customarily and regularly receive tips. . . .

29

[W]aiters, bellhops, waitresses, countermen, busboys, and service bartenders are among those who may participate in a tip pool. . . . [A]n employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips, such as janitors, dishwashers, chefs, or laundry room attendants.").[22]

Similarly, New York law provides that "[n]o employer or his agent or an officer or agent of any corporation, *or any other person* shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Labor Law § 196-d (emphasis added). The statute provides an exception for "sharing of tips by a waiter with a busboy or similar

_____

[22] Under one reading of the statute, a person who regularly shares in a tip pool is, by definition, a person who "customarily and regularly receives tips." However, to the extent this reading would allow workers to become eligible for tip sharing simply by taking money from the tip pool, the restriction on tip sharing would become utterly meaningless. To avoid this circular reasoning and absurd result, the Sixth Circuit interpreted 29 U.S.C. § 203(m) as requiring that individuals sharing in a tip pool be "tipped employees" as defined in § 203(t). That is, they must not only "customarily and regularly" receive tips, but they must be "*engaged in an occupation* in which [they] customarily and regularly receive[] tips." § 203(t) (emphasis added); see Kilgore, 160 F.3d at 301. In Kilgore, the court held that hosts at Outback restaurant satisfied § 203(t)'s requirement because their occupation was one involving frequent interaction with customers in an industry in which undesignated tips were common. Id. at 301; see also Myers v. Copper Cellar Corp., 192 F.3d 546, 550-51 (6th Cir. 1999); cf. Dole v. Cont'l Cuisine, Inc., 751 F. Supp. 799, 803 (E.D. Ark. 1990) (holding that a worker who is not an "employer" and who is "the type of employee who customarily receives tips" may participate in a tip pool); Bonham v. Copper Cellar Corp., 476 F. Supp. 98, 101 (E.D. Tenn. 1970) ("The second relevant precondition to reliance upon the tip credit is that the tipped employees must be permitted to retain all tips except for pooling with other *tipped employees*." (emphasis added)). Though this Court rejects a circular reading of § 203(m) under which anybody who takes from a tip pool thereby becomes eligible to do so, it need not determine at this stage whether to adopt the Kilgore court's reading of the statute or some alternative interpretation.

employee." Id.[23]  Though plaintiffs appear to grasp the breadth of this provision in one section

of their opening brief (see P. Mem. at 46-47), their arguments read as a whole suggest an

erroneous view that they *must* demonstrate that individuals sharing tips were employers or

agents of employers in order to prevail on their tip-sharing claim.  (See, e.g., P. Mem. Reply to

Triple 8 at 13; P. Mem. Reply to 88 Palace at 20-21.)[24]

    To the extent plaintiffs *choose* to rest their claims under 29 U.S.C. § 203(m) and New

York Labor Law § 196-d on the allegation that individuals sharing in the tips were "employers"

or "agents" of employers, they must demonstrate that the individuals may properly be

characterized as such.  The test for determining whether an individual qualifies as an "employer"

is the same under the FLSA and New York Labor Law.  See Chung v. New Silver Palace Rest.,

---

[23]  Like 29 U.S.C. § 203(m), see supra note 22, New York Labor Law § 196-d is susceptible to interpretations that could frustrate its clear purposes.  Read narrowly, for example, the provision might seem to bar employees receiving tips from sharing those tips with other employees who receive tips if the other employees are not "busboy[s] or similar employee[s]."  This might mean that if waiters are not considered "similar" to busboys, then waiters may not even share tips with each other.  See § 196-d (allowing tip sharing "by waiters with busboys" but making no mention of tip sharing among waiters).  Because such an interpretation would undermine the statute's manifest purpose to allow tip pooling, the Court rejects it.  Rather, the Court reads "similar employee" in the phrase "sharing of tips by a waiter with a busboy or similar employee" as referring not only to employees similar to busboys, but also employees similar to waiters.  Cf. New Silver Palace I, 246 F. Supp. 2d at 229 ("'A host or greeter may be eligible for Tip Sharing . . . .'" (quoting People v. Ngan Gung Corp., No. 402708/95, at 4 (N.Y. Sup. Ct. Nov. 13, 1995) (slip opinion))).

[24]  Moreover, even in portions of plaintiffs' briefs in which they appear to argue their case under a broader standard, they still fail to apply the *correct* standard.  In their opening brief for example, plaintiffs argue that "owners and managers" at Triple 8 improperly shared in the tip pool, which suggests a recognition that the workers need not be "employers" in order for the tip-sharing restrictions to apply.  However, the focus of the inquiry under federal law is not whether the individuals are properly considered "owners and managers," but whether they are engaged in an occupation in which they "customarily and regularly receive tips."  29 U.S.C. § 203(m).  The fact that a worker is a manager may be relevant to that inquiry, but it is not necessarily dispositive.

272 F. Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003) ("New Silver Palace II"); cf. Jankowski v.

Castaldi, 01 Civ. 0164 (SJF), 2006 WL 118973, at *8 n.5 (E.D.N.Y. Jan. 13, 2006) (noting that

New York's definition of "employer" is as broad as the FLSA's). "[T]he overarching concern is

whether the alleged employer possessed the power to control the workers in question, with an

eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Sec. Servs.

Ltd., 172 F.3d 132, 139 (2d Cir. 1999), quoting Goldberg v. Whitaker House Coop., 366 U.S. 28,

33 (1961) (additional citation omitted). The "economic reality" test looks to whether the alleged

employer "(1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." Id., quoting Carter v. Dutchess Comm.

Coll., 735 F.2d 8, 12 (2d Cir.1984) (additional citation omitted). These four factors are not

exclusive, however. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 68-71 (2d Cir. 2003). A

court "is free to consider any . . . factors it deems relevant to its assessment of the economic

realities." Id. at 71-72. One additional factor of particular relevance here is whether the

individual in question holds an ownership interest in the business. See New Silver Palace I, 246

F. Supp. 2d at 229-30.

    B.  Non-Banquet Tip Sharing at 88 Palace

    Plaintiffs allege that two "employers" at 88 Palace, Gong Gui Guan and Dai Hai Nan,

illegally shared in the non-banquet tips. (P. Mem. Reply to 88 Palace at 20.) As noted above, to

the extent plaintiffs rely on federal law, they can prevail only if defendants have relied on the tip

credit. See 29 U.S.C. §203(m); see Platek v. Duquesne, 961 F. Supp. 838-39 (W.D. Pa. 1995);

cf. New Silver Palace I, 246 F. Supp. 2d at 230 ("Congress gave employers of tipped employees

a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.").  The Court has already determined, however, that in light of the dispute as to whether the banquet service fees formed part of plaintiffs' wages, there is a genuine issue of material fact as to whether defendants relied on the tip credit.  See supra Part I.B.  Thus, there must also be a genuine issue of material fact as to whether the retention of non-banquet tips was illegal under the FLSA.

State law presents a different issue, because the New York Labor Law does not condition the employer tip-sharing prohibition on whether the employer takes advantage of the tip credit to meet minimum wage requirements.  The Court nevertheless denies plaintiffs' motion for summary judgment on this issue, because plaintiffs have failed to demonstrate that the individuals were either "employers" or that they fell into some other category of persons barred from sharing tips under New York law.

Plaintiffs rest their claim that Gong Gui Guan and Dai Hai Nan were barred from sharing tips primarily on the fact that both of them own (or owned)[25] shares in 88 Palace.  In the case of Gong Gui Guan, plaintiffs argue that his undisputed ownership share "by itself[] rendered him an employer under the law."  (P. Mem. at 48-49.)  Plaintiffs cite no authority supporting that proposition, however, and in view of the evidence in the record, there is clearly a genuine issue of material fact as to whether Gong Gui Guan and Dai Hai Nan fit the definition of employer established by New York and federal law.[26]  As noted by defendants, for example, Gong Gui

---

[25]  88 Palace claims that effective approximately February 2005, Gong Gui Guan is not a shareholder.  (See 88 Palace Response to P. Rule 56.1 Statement ¶ 4.)

[26]  To the extent plaintiffs rely on New Silver Palace I and Ayres to support the claim that part-owners are necessarily ineligible for tip sharing, their arguments are misplaced.  In New Silver Palace I, the court held that certain individuals were ineligible to share tips because they "were

Guan testified that he did not regard himself as part of the management; that he could be fired for misconduct; and that he never made suggestions or recommendations to the management about how the restaurant should be run.  (Gong Gui Guan Dep. 63:2-3, 78:15-18, 79:18-23, 93:20-25.) With regard to Dai Hai Nan, plaintiffs present *no* evidence in their brief suggesting that he "possessed the power to control the workers in question," Herman, 172 F.3d at 139, and rely solely on the fact that he owned one half of one share in the restaurant.[27]  (P. Mem. at 6, 49.) This is insufficient on the current record to warrant summary judgment in plaintiffs' favor.  In any event, defendants have disputed that Dai Hai Nan ever owned this one-half share.  (88 Palace Mem. at 14.)

Though plaintiffs may also prevail against 88 Palace under New York law simply by showing that, regardless of whether Gong Gui Guan and Dai Hai Nan were employers, owners, or managers, they were not waiters, busboys, or "similar employees," plaintiffs' briefs fail to squarely address this issue under this standard, and do not set forth sufficient facts that could allow the Court to make such a determination on its own.  See Barlette v. Consol. Rail Corp., 92 Civ. 251S (WMS), 1994 WL 721342, at *2 (W.D.N.Y. Dec. 6, 1994) (noting that a party seeking

---

part-owners of the restaurant, as well as agents of the owners, sat on the restaurant's Board of Directors, and exercised substantial managerial authority over the day-to-day operations of the restaurant." New Silver Palace I, 246 F. Supp. 2d at 230.  In Ayres, the individual improperly retaining tips was an employer who had the "full authority" to suspend or terminate employees, supervised wait staff, made hiring decisions, and helped manage the restaurant's budget, including payroll.  12 F. Supp. 2d at 308.  Plaintiffs also cite In re Ngan Gung Rest., Inc. v. New York, 183 B.R. 689 (Bankr. S.D.N.Y. 1995), for the proposition that tip sharing by part-owners is illegal.  Ngan Gung held no such thing; rather, the court held that a state action to enforce New York Labor Law §196-d was "excepted from the automatic stay pursuant to § 362(b)(4)" of the Bankruptcy Code.  Id. at 695.

[27]  The total number of shares held by the restaurant's owners was at least thirty.  (See Cheffo Dec. Ex. 7.)

summary judgment has the burden of "identify[ing] for the court those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact," and that "it is not the court's responsibility to probe the entire record to determine the absence of material issues of fact" (citations and internal quotation marks omitted)); see also United States v. CNA Finan. Corp., 168 F. Supp. 2d 1109, 1121 (D. Alaska 2001) (explaining that even where the "general thrust" of the moving party's arguments seems "plausible," it is "not the court's responsibility to sift through all the deposition testimony and other exhibits submitted by the parties to find support for a party's arguments," and that it "is incumbent upon the [moving party] to support its motion with exhibits appropriately cited, to establish that there are no genuine issues of material fact in dispute, and to establish that it is entitled to summary judgment as a matter of law"). Moreover, evidence cited by defendants suggests that both Gong Gui Guan and Dai Hai Nan performed service duties. (See, e.g., Hochheiser Dec. Ex. 22; Gong Gui Guan Dep. 11:21-22.) In view of plaintiffs' failure to adequately present contrary evidence, the testimony cited by defendants suffices to create a genuine issue of material fact regarding Gong Gui Guan and Dai Hai Nan's eligibility to share plaintiffs' tips.

The 88 Palace defendants also seek summary judgment on this issue. However, in view of Gong Gui Guan's undisputed ownership interest and Dai Hai Nan's alleged one-half share, there is a genuine issue of material fact as to whether these defendants fell into a category of individuals—such as employers—who were barred from taking tips. Cf. New Silver Palace I, 246 F. Supp. 2d at 230 (holding that managers with ownership interests could not legally share employees' tips).[28] If Gong Gui Guan and Dai Hai Nan were in fact "employers" who took from

[28] Indeed, defendants appear to concede at one point in their brief that the Court should not determine Gong Gui Guan's employer status on summary judgment. (88 Palace Mem. at 16,

the tip pool, this will be enough to establish a violation of state law, and the fact that they also performed some service duties would not immunize 88 Palace from liability.  See id. at 229.

C. Non-Banquet Tip Sharing at Triple 8

As in the case against 88 Palace, plaintiffs can only prevail on a federal claim against the Triple 8 defendants based on non-banquet tip sharing if Triple 8 relied on the tip credit.  See 29 U.S.C. § 203(m); see New Silver Palace I, 246 F. Supp. 2d at 230; see also Duquesne, 961 F. Supp. at 838-39.  But unlike in the case of 88 Palace, the Triple 8 defendants concede that they relied on the tip credit (Triple 8 Mem. at 9)—despite the fact that this presents something of an inconsistency with their claims regarding the service fees, see supra Part I.D.4.  Thus, the Triple 8 defendants may be liable under both state *and federal* law if they forced plaintiffs to share their tips with ineligible employees.

1. The former defendants

Plaintiffs claim that Triple 8 violated restrictions on tip sharing by allowing former defendants Mandy Chan, Chiu Ng, Wei Wong, and Zen Quan Zhao ("the former defendants") to retain some of the non-banquet tips.  Tip sharing by these workers was impermissible, plaintiffs argue, because the former defendants "had significant management responsibilities"; carried business cards indicating that they were managers; were permitted to represent to customers they were managers; accepted and paid for deliveries; escorted health inspectors during visits; and addressed customer complaints.  (P. Mem. at 12.)  They also supervised waiters and busboys; made menus; set menu prices; set shifts for other employees; made hiring recommendations; and documented and calculated tip sharing.  (Id.)  Both Triple 8's brief and Kwok Ming Chan's

arguing that "it must be left to a jury to determine whether . . . Gong Gui Guan . . . qualifies as an employer.")

affidavit reject the former defendants' characterization of their jobs. (Triple 8 Mem. at 21; Kwok Ming Chan Affidavit ¶¶ 17, 22.)

To the extent plaintiffs are attempting to prove that the above-noted responsibilities made the four former defendants "employers" under federal and state law, plaintiffs have not made a showing adequate for summary judgment. As plaintiffs note elsewhere in their brief, the "overarching concern" in determining employer status "is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Herman, 172 F.3d at 139 (citations and further internal quotation marks omitted). Though plaintiffs have recited a list of employment duties held by the former defendants, they do not adequately explain how and to what extent these facts demonstrate that the former defendants "possessed the power to control" the plaintiffs. If the former defendants had several important responsibilities and some degree of authority over waiters and busboys, that may lend substantial support to the argument that they were "employers," but absent more, and in light of defendants' contrary testimony (Kwok Ming Chan Affidavit ¶¶ 17, 22), it is not sufficient to entitle plaintiffs to judgment as a matter of law.[29]

Of course, even if the former defendants were not "employers," plaintiffs could prevail against Triple 8 under federal law if they demonstrated that the former defendants were not employed in an occupation in which they "customarily and regularly receive[d] tips"; and they could prevail under state law if they demonstrated that the former defendants were not waiters, busboys, or "similar employee[s]." 29 U.S.C. § 203(m); New York Labor Law § 196-d. Once

---

[29] Plaintiffs also allege that Hang Li was ineligible under federal and state law to share in the tip pool because he was a "manager," but the evidence on which plaintiffs rely is insufficient for summary judgment purposes. Hang Li's testimony, for example, indicates that he may have been confused as to what "manager" meant. (Hang Li Dep. 20:12-16, 21:7 to 25:15.)

again, however, plaintiffs have not adequately addressed the facts under the proper standard.

Moreover, while many of the facts noted above suggest that plaintiffs have a strong case, other

evidence raises questions regarding whether, even under the correct, broader standard, plaintiffs

would be entitled to judgment as a matter of law. The affidavits submitted by the former

defendants, for example, indicate that despite some managerial responsibilities, they all

continued to wait on tables during their employment at Triple 8. (Cheffo Dec. Exs. 1-4.)

Defendant Kwok Ming Chan, moreover, submitted an affidavit claiming that none of the former

defendants were managers and that all of them waited on tables. (Kwok Ming Chan Affidavit ¶¶

17, 22.) In light of the disputed facts and the confusion surrounding the legal standard, plaintiffs

are not entitled to summary judgment on this claim as it pertains to the former defendants.[30]

### 2. Retention of tips by Triple 8 defendants

Plaintiffs also allege that the Triple 8 defendants themselves—including Kwok Ming

Chan, the restaurant's undisputed owner, manager and employer, and Grace Chan, the

restaurant's other shareholder and an officer of the corporation (Triple 8 Mem. at 5, 22; see also

Grace Chan Dep. 43)—illegally shared in the tip pool prior to a well-publicized labor dispute at

a different restaurant, Jing Fong, which took place in 1997. Kwok Ming Chan's testimony

---

[30] Though the Court denies plaintiffs' motion for summary judgment against Triple 8 on the
question of non-banquet tip sharing by these defendants, the Court does not by any means credit
all of the arguments presented by defendants. Like plaintiffs, defendants do not address the facts
under the proper legal standard. Moreover, defendants' argument that the former defendants
were entitled to share tips because their jobs were identical to those of plaintiffs does not find
support in the record. For instance, 88 Palace claims that plaintiff Yan Bin Cao "acknowledged
that he was often referred to as a 'supervisor'"; that he kept records of other employees; and that
his duties "included directing busboys and waiters." (Triple 8 Mem. at 21.) In the deposition
testimony on which defendants rely, however, Yan Bin Cao stated the his job was the same as
that of a waiter, that he gave no orders but rather conveyed to others the instructions of the
management; that he did not keep any records; and that he was not even sure what "supervisor"
meant. (Yan Bin Cao Dep. 35:10-12, 39:4-7, 54:2, 135:20.)

supports plaintiffs' arguments (Kwok Ming Chan Dep. 264:8 to 266:24, 350:4-12), and Triple 8's brief does not dispute the accuracy of the cited testimony. Thus, there appears to be no genuine factual issue as to whether the Triple 8 defendants improperly retained tips prior to the 1997 Jing Fong dispute.[31]

Summary judgment on this issue is nevertheless not warranted, because it remains unclear to what extent the relevant statutes of limitations bar the conduct in question. See 29 U.S.C. § 255(a) ("Any action . . . to enforce any cause of action for unpaid minimum wages . . . under the Fair Labor Standards Act of 1938, as amended . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ."); New York Labor Law § 663(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."). Though the Triple 8 defendants do not press a statute of limitations defense in their summary judgment papers, the defendants have, according to plaintiffs' brief, consistently maintained throughout discovery that the statutes of limitations bar liability for pre-1997 conduct. (P. Mem. at 47 n.33.) The Triple 8 defendants also relied on the statutes of limitations in their answer to the complaint. (Triple 8 Answer ¶ 100.) Under these circumstances, the Court is reluctant to conclude that the defense is forfeited. Cf. Kulzer v. Pittsburgh-Corning Corp., 942 F.2d 122, 125 (2d Cir.1991) (holding that

---

[31] Defendants' failure to present contrary evidence might result from their misunderstanding of plaintiffs' claims. Though plaintiffs' allegation that the Triple 8 defendants shared in the tip pool appears both in their summary judgment papers (P. Mem. at 14, 47) and in the complaint (Complaint ¶ 62), defendants erroneously state in their brief that "there are no allegations" that Kwok Ming Chan shared in the tip pool. (Triple 8 Mem. at 22.)

"bare assertion" of statute of limitations in answer preserved it to be raised again mid-trial, despite failure to raise it in pretrial dispositive motions).

That is not to say, however, that the statutes of limitations will necessarily bar liability for Triple 8's pre-1997 conduct. Plaintiffs claim in a footnote to their opening brief that defendants' "deceptive conduct prevented the Plaintiffs from discovering or asserting their claims any earlier than they did." (P. Mem. at 47 n.33.) If this allegation has merit, defendants may be barred from asserting that plaintiffs' claims have expired. See, e.g., Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 942 (2d Cir. 1998) ("Under New York law, as generally, a party may be estopped from raising a statute of limitations defense where his fraud, concealment, or deception prevented the plaintiff from timely filing his claim."). The current record is not developed enough to allow meaningful consideration of the issue.

III. Notice of Minimum Wage and Tip-Sharing Laws

Under federal law, employers cannot claim a tip credit unless employees are properly informed of the provisions of 29 U.S.C. § 203(m). New Silver Palace I, 246 F. Supp. 2d at 228-29. Employers may satisfy this requirement if they give employees a copy of § 203(m) and inform them that their tips will be used as a credit against the minimum wage as permitted by law. See Kilgore, 160 F.3d at 298-300. Employers do not have to "explain" the tip credit to employees, however; it is enough to "inform" them of it. Id. at 298.

Under New York law, all restaurant employers must post, "in a place accessible to . . . employees and in a visually conspicuous manner, a copy of . . . section[] one hundred ninety-six-d" of the Labor Law and "any regulations promulgated pursuant thereto relating to illegal deductions from wages and tips by employers." New York Labor Law § 198-d.

The evidence regarding compliance with notice requirements at both Triple 8 and 88 Palace consists primarily of testimony that is conflicting, conclusory, evasive or ambiguous; such testimony is insufficient to entitle any party to summary judgment. (See, e.g., Hang Li Dep. 55:21 to 56:24, Kwok Ming Chan Affidavit ¶ 23, Christopher Miu Affidavit ¶ 8; Fong Li Dep. 76:3-5, Gui Yang Dep. 105:21 to 107:25, Yeung Chao Lo Dep. 147:12 to 149:23, Kung Tak Yeung Dep. 111:5 to 112:25.) However, to the extent plaintiffs allege that 88 Palace violated New York notice requirements from the time of the restaurant's opening until December 11, 2003, the evidence weighs more heavily in plaintiffs' favor and warrants further discussion.

Plaintiffs argue that 88 Palace defendants failed to comply with New York state posting requirements (see Shing Tao Au Dep. 67; P. Mem. at 54-55), and specifically allege that no sign was posted from the time 88 Palace opened in August 2002 until at least December 11, 2003, the date on which 88 Palace purchased a notice from the New York Department of Labor. (See id. at 55; see also P. Reply to Triple 8 Mem. at 18.) In response, 88 Palace makes the erroneous argument that New York notice requirements do not apply to employers who do not take advantage of the tip credit.[32] (See 88 Palace Mem. at 12.) While this restriction exists under federal law, New York Labor Law § 198-d requires *all* restaurant employers to post a copy of § 196-d and corresponding regulations, regardless of whether the employer takes advantage of the tip credit.

Though they misstate the legal standard under state law, the 88 Palace defendants nevertheless claim that plaintiffs were given adequate notice of minimum wage provisions.

---

[32] This requirement provides a further reason for denying summary judgment on plaintiffs' claims of violation of the federal posting requirement. Because there is a genuine issue of material fact as to whether 88 Palace relied on the tip credit, there must also be a genuine issue of material fact as to whether defendants violated the notice requirement of 29 U.S.C. § 203(m).

Remarkably, however, the 88 Palace defendants do not dispute plaintiffs' claims insofar as plaintiffs allege violations before December 11, 2003. Rather, the 88 Palace defendants claim only that notice was posted (1) "at some point after the restaurant opened for business" and (2) "prior to January 2004," which is over sixteen months after the restaurant's opening. (88 Palace Mem. at 12.) Defendants expressly concede that 88 Palace did not purchase a Department of Labor sign until December 11, 2003 (id.), and documents produced by 88 Palace's accountant confirm the accuracy of this date. (See Cheffo Dec. Ex. 25.) Though it may be possible to comply with New York Labor Law § 198-d's requirements without purchasing an official sign—perhaps by making one's own sign—defendants do not claim that they did so. In fact, defendant Yeung Chao Lo testified that the restaurant did not post a sign until it received one from the Department of Labor. (Yeung Chao Lo Dep. 147:12-17.) Kung Tak Yeung's testimony also indicates that the only sign posted was the sign received in the mail (Kung Tak Yeung Dep. 111:13-16), and 88 Palace's brief implicitly concedes the same. (See 88 Palace Mem. at 12 ("[A]s Plaintiffs note, Gui Yang and Yeung Chao Lo both testified that a minimum wage notice was mailed to 88 Palace and posted at some point after the restaurant opened for business."; see also id., stating that "88 Palace purchased the Department of Labor sign on December 11, 2003," and arguing that this date of purchase supports Gui Yang's testimony that 88 Palace posted a notice prior to January 2004.) Thus, it appears to be beyond question that 88 Palace was in violation of New York Labor Law § 198-d from the time of the restaurant's opening until at least December 11, 2003.[33]

---

[33] Though defendant Kung Tak Yeung testified at one point during his deposition that he posted the notice at 88 Palace when he took over the restaurant in 2002 (Kung Tak Yeung Dep. 111:5-9), he subsequently contradicted—and effectively disavowed—that claim. For example, immediately after claiming that he posted a sign when the restaurant opened, he stated that he

Plaintiffs' motion for summary judgment on this claim is nevertheless denied, because even if defendants violated § 198-d during the time period in question, it remains unclear whether and in what sense defendants are liable to plaintiffs for that violation. Unlike 29 U.S.C. § 203(m), which renders employers ineligible for the tip credit if they fail to provide adequate notice, New York Law Labor § 198-d does not provide for any remedies or penalties against employers who violate its provisions. The Court has not found any statute or case law describing what legal consequences, if any, flow from an employer's violation of § 198-d, and plaintiffs have not described the specific nature of the harm that they suffered as a result of the alleged violation.[34] Without demonstrating whether, to what extent, or in what sense defendants' alleged violation of § 198-d inflicted a redressable harm or gave rise to a specific legal consequence or obligation, plaintiffs' motion for summary judgment on the question of liability must fail. Cf. Mattox v. News Syndicate Co., 176 F.2d 897, 901 (2d Cir. 1949) ("Liability means th[e] obligation to redress the person wronged . . . ."); Black's Law Dictionary 932 (8th ed. 2004) (defining "liability" as the "quality or state of being legally obligated or accountable;

_____

posted the sign "after August" 2002. (Id. at 111:13.) Later, he claimed that he "didn't pay attention" to when the sign was posted. (Id. at 112:25.)

[34] Plaintiffs' complaint does not even cite § 198-d, though this need not affect the merits of plaintiffs' claim, given that the complaint's reference to defendants' general failure to provide notice could be read as incorporating a § 198-d claim. (See Complaint ¶¶ 1, 74, 83); see McEachin v. McGuinnis, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well-established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." (citation and internal quotation marks omitted)). More importantly, however, the complaint fails to specify any possible remedy for the notice violation, other than to claim that an employer who fails to provide notice is ineligible for the tip credit. However, even if state law, like federal law, provided that employers who violate notice provisions are ineligible for the tip credit, plaintiffs would still not be entitled to summary judgment, because there is a genuine issue of material fact as to whether 88 Palace relied on the tip credit to satisfy minimum wage requirements.

legal responsibility to another or to society, enforceable by civil remedy or criminal punishment").[35]

IV.  Spread of Hours

Under New York law, employers must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday."  Id. § 137-3.11. "The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  Id.  Plaintiffs allege that both defendants violated this provision by failing to pay an additional hour at minimum wage on days when plaintiffs worked a spread of hours exceeding ten hours.

Defendants, in response, rely on a 2003 advisory letter from the New York Department of Labor, issued in an unrelated matter.[36]  In the letter, the Department explains that "[i]n determining compliance with [the spread-of-hours provision], the Division of Labor Standards computes the total minimum wages due an employee for the workweek and compares it with the compensation actually received by the employee for that workweek."  (88 Palace Mem. at 16-17.)  If the total compensation is equal to or greater than the minimum wages due, including

---

[35]  Moreover, to the extent plaintiffs fail to allege a redressable harm arising from defendants' alleged violation of § 198-d, their claim may be barred by lack of standing.  See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). However, given the limited extent of the parties briefing on the § 198-d issue, the Court will not render any ruling on the standing question at this stage.

[36]  Only the 88 Palace defendants cite the letter in their brief, but the letter's contents have equal relevance to the spread-of-hours claim against Triple 8.

compensation for an additional hour for each day in which the spread of hours exceeds ten, "no additional payments are due the employee because of the spread-of-hours provision found" in N.Y. Comp. Codes R. & Regs. tit. 12, § 142.4. (Id.) This interpretation makes sense, since § 142.4 by its own terms is concerned only with ensuring an additional amount above the "*minimum* wage" when certain conditions are met (emphasis added).[37]

At least one court has rejected the interpretation on which defendants rely. In Doo Nam Yang v. ACBL Corp., 04 Civ. 8987 (LBS), 2005 WL 3312000 (S.D.N.Y. Dec. 5, 2005), Judge Sand noted the New York Department of Labor's interpretation but declined to adopt it, because "the effect of adopting the agency's interpretation would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage." Id. at *7. In Judge Sand's view, nothing in the regulations dictated such an exception. This Court respectfully disagrees. The plain text of § 142.4 ensures an additional wage only "in addition to the *minimum* wage" required under New York law (emphasis added). It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.

Here, a genuine issue of material fact exists as to the amount of non-tip compensation earned weekly by the plaintiffs, because the parties dispute whether the portion of banquet service fees retained by plaintiffs constituted "tips." See supra Parts I.B to I.D. Because plaintiffs' total non-tip compensation remains unknown, the Court cannot determine at this stage

---

[37] New York law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." New York Labor Law § 190(1).

whether either set of defendants has violated the spread-of-hours provision.[38]

V.  Uniform Laundering

New York law provides that "[n]o allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8.  "Where the employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage . . . (a) $6.40 per week on and after March 31, 2000, if the employee works more than 30 hours weekly . . . ."  Id. The provision only applies "if the employees' expenditures for [uniform-maintenance] purposes would reduce their wages to below minimum wage."  Ayres, 12 F. Supp. 2d at 310.[39]

Here, it is impossible for the Court to determine whether plaintiffs' uniform-related expenditures would reduce their wages below the minimum wage, because there is a genuine issue of material of fact as to whether the banquet service payments at 88 Palace and Triple 8 were wages.  Accordingly, neither plaintiffs nor 88 Palace are entitled to summary judgment on this issue.

_____

[38] This conclusion is not undermined by Triple 8's reliance on the tip credit, because Triple 8's purported reliance on the tip credit may have been unnecessary.  That is, even if Triple 8 believed itself to be relying on the tip credit, the total weekly non-tip compensation to plaintiffs may have exceeded the minimum wage.  See supra Part I.D.4.

[39]  Though plaintiffs dispute this interpretation of the law, claiming that defendants were required to pay for uniform-related costs regardless of the amount received in wages, they do not cite any authority for their argument.  The law's plain language provides that employers who fail to maintain and launder employees' uniforms need only pay an additional amount above the "*minimum*" wage to cover uniform-related costs.  N.Y. Comp. Codes R. & Regs. tit. 12, 137-1.8 (emphasis added).  If the employers already pay a sufficient amount for laundering as part of regular compensation, they have complied with § 137-1.8, even if they have not expressly declared that a certain portion of the wage represents reimbursement for uniform-related expenses.

## CONCLUSION

For the reasons discussed, both motions for summary judgment are denied in their

entirety.

SO ORDERED.

Dated: New York, New York
     March 30, 2006

                        GERARD E. LYNCH
                     United States District Judge