UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
HENG CHAN, SHING TAO AU, YAN BIN CAO, :
AI YIN CHEN, WAN ZHEN JIANG, FONG LI, :
JIAN YUN LIN, WEI CHAO TAN, FENG QIN :
ZENG TANG, SUM KAY WONG and YONG :
CAI ZHANG, :
:
               Plaintiffs, :
: 03 Civ. 6048 (GEL)
    v. :
: **AMENDED OPINION AND ORDER**
SUNG YUE TUNG CORP. d/b/a 88 PALACE, :
KUNG TAK YEUNG, GUI YANG, GONG GUI :
GUAN, CHEUK HONG LAU, and YEUNG :
CHAO LO, :
:
               Defendants. :
:
------------------------------------------------------------x

Mark S. Cheffo, Rachel B. Passaretti, and Mara Cusker Gonzalez, New York, New York, and Raymond Brescia, Urban Justice Center, New York, New York, for plaintiffs.

Daniel Hochheiser and Michael Sande, Hochheiser & Hochheiser LLP, New York, New York, for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiffs, a group of eleven waiters, busboys, and captains employed at the 88 Palace Restaurant in New York City's Chinatown, brought this case under the Fair Labor Standards Act ("FLSA") and the New York Labor Law alleging violations of federal and state labor laws by the restaurant and its managers and owners. The parties tried the case before the Court from November 27 to December 6, 2006, and on February 1, 2007, the Court issued Findings of Fact and Conclusions of Law awarding damages of $699,374.32 against the defendants other than

Gong Gui Guan. Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007). Plaintiffs now move for an award of attorneys' fees, costs, and prejudgment interest. The motion will be granted.

## BACKGROUND

In August 2003, the plaintiffs filed a complaint in this Court alleging that the defendants, as well as a number of other defendants no longer in the case,[1] violated the FLSA and the New York Labor Law by unlawfully retaining certain tips to which the plaintiffs were entitled, by reducing plaintiffs' wages in the amount of a "tip credit" to which defendants were not entitled, and by failing to pay plaintiffs overtime, uniform expenses, and extra pay to which they were entitled for working more than a given spread of hours. The Court found in favor of plaintiffs on almost all of their claims, with the exceptions of the claims against defendant Gong Gui Guan, who was found not to have exercised managerial authority and therefore not subject to liability. Chan, 2007 WL 313483, at *13. Specifically, the plaintiffs were awarded compensatory damages totalling $363,368.08 under both New York law and the FLSA, liquidated damages under the FLSA of $326,885.63, and liquidated damages under New York law of $9,120.61, for a total of $699,374.32. Defendants raise several objections to plaintiffs' calculation of attorneys' fees and interest.

---

[1] Shortly before trial, plaintiffs reached a settlement with a second group of defendants, the previous owners and managers of the restaurant. A third group of defendants, Lung Kong Chan a/k/a Mandy Chan, Chiu Ng, Wei Wong a/k/a David Wong, and Zen Quan Zhao, were voluntarily dismissed after the close of discovery. Plaintiffs' application for costs excludes all entries "reflecting work done primarily in connection with" their claims against these defendants. (Cheffo Aff. ¶ 14.) Defendant Hang Li was voluntarily dismissed after the bench trial.

DISCUSSION

I.     Attorneys' Fees and Costs

Both the FLSA and the state Labor Law provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198. In ascertaining the amount of fees to award, the Second Circuit uses the "lodestar" or "presumptively reasonable fee" method of calculation, which involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award. LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763-64 (2d Cir. 1998). After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Defendants make several objections to the award of attorneys' fees. They argue (1) that the hourly rates requested should be reduced; (2) that certain work was unnecessary; (3) that the award should be reduced to account for the fact that two defendants prevailed on the claims asserted against them; and (4) that plaintiffs should receive no fees for work performed after December 18, 2004, because at that point plaintiffs stopped negotiating in good faith for a settlement.

   **A. Reasonable Hourly Rates**

Defendants argue that plaintiffs' proposed hourly rates are unreasonable, but make no real effort to propose an alternative rate for the relevant attorneys. They propose a figure of

$220 per hour, but do not explain whether they intend this proposal to apply to the partner who represented plaintiffs in the case, the associates, or both.

To determine the reasonable hourly rate for each attorney, courts must look to current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998). Since this case was brought in the Southern District of New York, the relevant community to which the Court should look is that of Manhattan civil rights attorneys. Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000). In determining the value of the presumptively reasonable fee, the Second Circuit recently explained,

> the district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, ___ F.3d ___, 2007 WL 1189487, at *1 (2d Cir. Apr. 24, 2007). In this case, most of these factors point to a relatively high award of fees. The case was unusually difficult and complex, the resources required to prosecute it immense. Importantly, the damages sought were low compared to the likely expense of prosecuting the case, which would have been a significant disincentive for an attorney to take the case and therefore a reason to charge a higher fee.

Defendants argue that the fees sought should be reduced because plaintiffs' counsel, employees of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), took the case pro bono. It is well-established that civil rights attorneys not working for profit are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients, Blum v. Stenson, 465 U.S. 886, 892-94 (1984), and defendants are careful not to argue that a "penalty for taking a case pro bono" is merited. (D. Mem. 2 n.3.) As this Court noted in a prior case, "[i]f the measure is the market rate, what matters is the value placed on lawyers' services by clients in the market, not whether the lawyers who receive that value spend it on fancy offices and extravagant salaries, or plow it back into subsidizing public interest activities." Moon v. Kwon, No. 99 Civ. 11810, 2002 WL 31512816, at *2 (S.D.N.Y. Nov. 8, 2002).

The Second Circuit in Arbor Hill listed the question of whether an attorney "was initially acting pro bono" as a factor to be considered in calculating the presumptively reasonable fee. 2007 WL 1189487, at *1. Although the fact that an attorney is willing to take a case pro bono is not itself a basis for reducing fees, a discount in fees is appropriate insofar as the market rate for civil rights litigation services is lower than the market rate for services provided to high-profile corporate clients. See Pastre v. Weber, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) (concluding that defendant should not be required to pay the rates usually charged to clients such as General Motors or IBM, but should be required to pay the rates that "would have been charged by a competent attorney specializing in civil rights litigation"). The hourly rates sought in this case, however, already reflect a substantial discount from the regular market rates charged by Skadden for the services of these attorneys. Moreover, plaintiffs' counsel represent that they have excluded from their application over 4,100 hours of time recorded by attorneys and others who

5

worked on the case. (Cheffo Aff. ¶ 16.) Thus, although the difference between the market for private and pro bono litigation services is a factor to be considered, it has already been accounted for in plaintiffs' calculations.

Moreover, even when the relevant market is defined as civil rights litigators in Manhattan, the presumptively reasonable fee should still be quite high for a case of this size and complexity. The institutional resources of a large firm such as Skadden, with the higher overhead and other costs that go with them, see <u>Burr v. Sobol</u>, 748 F. Supp. 97, 102 (S.D.N.Y. 1990), were in all likelihood a necessary condition for the successful prosecution of this multi-year action involving a host of witnesses and parties, numerous boxes of documents, and depositions and investigations conducted in four languages. It would have been difficult, if not impossible, for most small civil rights firms or nonprofit organizations to take on the case at all, which is perhaps why the violations at issue in this case are, according to defendants' testimony at trial, widespread in Chinatown. Accordingly, it is appropriate to award a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case.

Mark Cheffo, the Skadden partner who supervised the litigation team, is a litigator with sixteen years of experience. (Cheffo Aff. ¶ 20.) He requests $450 per hour. Plaintiffs submit affidavits from two experienced and well-qualified attorneys who attest that this rate is reasonable; one of the affidavits is on behalf of a practicing civil rights attorney with experience and qualifications comparable to Cheffo's who attests that $450 per hour is in fact his regular rate. (Piper Hoffman Aff., Cheffo Aff. Ex. G; see Kenneth Kimerling Aff., Cheffo Aff. Ex. F.) Defendants have provided no evidence suggesting otherwise. Courts in this district have

approved comparable fees for experienced litigators from major firms in civil rights cases. See Rodriguez v. McLoughlin, 84 F.Supp.2d 417, 421-23 (S.D.N.Y. 1999) (awarding $425 for experienced civil rights senior partner at large firm).[2] Accordingly, the Court finds that the requested rate is reasonable.

The requested rate for Raymond Brescia, the associate director of the Urban Justice Center and an adjunct professor at New York Law School with fifteen years' experience in practicing law and significant experience in complex civil rights litigation, is $400 per hour. (Brescia Aff. ¶¶ 7-10.) See Moon, 2002 WL 31512816, at *2 (awarding $350 per hour to an experienced civil rights attorney, and noting that Southern District courts have awarded as much as $390 per hour for civil rights attorneys with comparable experience). Brescia's role in the case involved initial preparatory work, including the search for pro bono counsel; after Skadden joined the case, his role was "mostly advisory in nature." (Brescia Aff. ¶¶ 5-6.) The fact that Brescia requests compensation for only 53.7 hours supports the conclusion that he was indeed involved in this case as an iniator and advisor, and there can be no question that a case of this complexity made it appropriate to make use of the services of someone with Brescia's experience in this capacity. Accordingly, it was reasonable to retain someone with Brescia's qualifications to perform such services, and his requested rate will not be reduced.

Rachel Passaretti is a sixth-year associate at Skadden, who served as co-lead counsel in this case. (Cheffo Aff. ¶ 21.) Her requested rate, $300, is discounted from her regular rate, which grew from $325 to $520 per hour during the course of this litigation. It was clear from the

---

[2] Notably, the Court in Rodriguez awarded an hourly rate of $425 eight years ago. It cannot be questioned that the market rates for legal services in New York has increased in that period.

Court's observations at trial that Passaretti bore a great deal of the responsibility involved in preparing and presenting the case, and in all respects served as co-lead counsel. In light of her experience and qualifications, her rate is reasonable.

Erica Goodstein and Kenneth Schwartz are Skadden associates who were admitted to the bar at approximately the same time as Ms. Passaretti. (Cheffo Aff. ¶¶ 23-24.) They worked on the preparation of the case but not the trial, and seek the same rate as Ms. Passaretti, similarly discounted from their regular rates. Their rates too are reasonable.

Mara Cusker Gonzalez, currently a second-year associate, seeks hourly rates of $250 for the time spent on the case after her admission to the bar, and $150 for the work prior to her admission. (Cheffo Aff. ¶ 22.) These rates, like Passaretti's and Cheffo's, are significantly discounted. The Court has no doubt from its observations at trial that Cusker Gonzalez's contributions to the case were substantial; nonetheless, the relevant question is not how much value the client received, but how much the market would charge, and $250 per hour is an unusually high sum for an associate with less than two years' experience. See Morris v. Eversley, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004) (finding $200 per hour appropriate for associates at large firms with with one to three years' experience); Nam Yang v. ACBL Corp., No. 04 Civ. 8987, 2006 WL 435720, at *3 (S.D.N.Y. Feb. 22, 2006) (finding $175 a reasonable hourly rate for an attorney with less than two years' experience, but noting that awards of $200 were common, and finding $100 reasonable for pre-admission work). Accordingly, Cusker Gonzalez's rate will be reduced to $200 per hour for post-admission work, and $100 per hour for pre-admission work.

Defendants make no objection to the rates requested for paralegal services, which range from $50 to $150 per hour, and the Court finds those rates to be reasonable. See Moon, 2002 WL 31512816, at *2 ("In the Southern District, paralegal fees have recently been awarded at rates ranging from $75 to $130, depending on the amount of experience possessed by the paralegal.")

### B. Reasonable Number of Hours

After determining the reasonable hourly rates for each attorney, the Court must examine the hours expended by counsel to determine their reasonableness, excluding "excessive, redundant, or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, "as a practical means of trimming fat from a fee application." In re Agent Orange Prod. Liability Litig., 818 F.2d 226, 237 (2d Cir. 1987) (internal citation omitted).

Defendants make three challenges to the hours claimed. First, they argue that the appearance of three lawyers at trial was unnecessary: "Surely Skadden partner Mark Cheffo, with the assistance of a single associate, more than adequately could have handled the trial responsibilities." (D. Mem. 3.) On the contrary, this case was unusually complex, as discussed above. Perhaps it would have been possible for two lawyers to handle the case, as indeed was the case on the defense side, but the Court has no doubt that in light of the extraordinary volume of documents, the large number of witnesses, and the factual complexity of the case, the plaintiffs were markedly better served by three attorneys than they would have been by two.

Second, defendants contest plaintiffs' claim of 12.5 hours for Brescia's attendance at the trial. Brescia's participation at trial was extremely limited. An attorney who does not make arguments or examine witnesses, as Brescia did not, may still make a significant contribution at trial. However, plaintiffs make little effort to explain what value Brescia's presence added. Moreover, the description of his contribution to the case, and the limited number of hours billed, suggest that Brescia's principal contribution occurred early in the case, and did not involve the kind of intense involvement with the record that would make him a valuable advisor on trial strategy or tactics. Similarly, the fact that the 12.5 hours during which Brescia attended trial represent only a small fraction of the seven and a half trial days makes it difficult to conclude that he would be able to contribute meaningfully to decisions made by lawyers who were actively present throughout the trial, especially given that the trial was already staffed by three lawyers. Accordingly, the fees awarded will not include these hours.

Third, defendants challenge the billing of 90 hours for Skadden associate Erica Goodstein, on the grounds that the time spent between June and September of 2004 on deposition preparation and document review was probably redundant in light of the fact that the first deposition did not occur until November of that year. (D. Mem. 3-4.) This is far from obvious, however, in light of the immense quantity of documents involved in this case and the large number of defendants. On the contrary, 90 hours spent reviewing the relevant documents in preparation for deposition seems eminently reasonable, as do the other hours claimed by plaintiffs. Accordingly, defendants' challenges to the number of hours spent by plaintiffs are rejected, except as to Brescia's hours at trial.

C.     **Presumptively Reasonable Fees Calculation**

For the reasons discussed above, the calculation of presumptively reasonable fees will be based on the hours and requests requested by the plaintiffs, with the exception of the calculation for Cusker Gonzalez, and the elimination of the trial hours for Brescia. The total amount of presumptively reasonable fees is $957,710.00, as set forth in the following table:

| Attorney | Rate | Hours | Award |
| --- | --- | --- | --- |
| Mark S. Cheffo | $450/hour | 431.9 | $194,355.00 |
| Rachel B. Passaretti | $300/hour | 1380.6 | $414,180.00 |
| Mara Cusker Gonzalez | $200/hour | 436.7 | $87,340.00 |
|  | $100/hour | 62.6 | $6,260.00 |
| Erica Goodstein | $300/hour | 336 | $100,800.00 |
| Kenneth B. Schwartz | $300/hour | 124.8 | $37,440.00 |
| Raymond Brescia | $400/hour | 41.2 | $16,480.00 |
| Senior Legal Assistant | $150/hour | 118.9 | $17,835.00 |
| Legal Assistant | $125/hour | 634.2 | $79,275.00 |
| Legal Assistant Support | $50/hour | 74.9 | $3,745.00 |
| **TOTAL** |  |  | **$957,710.00** |

D.     **Arguments for Reducing the Presumptively Reasonable Fee Award**

Defendants contend that the fee award should be reduced in light of the fact that plaintiffs did not prevail as against defendants Gong Gui Guan and former defendant Hang Li, the latter of whom was voluntarily dismissed after the conclusion of the trial. Where "the plaintiff's claims

for relief . . . involve a common core of facts or [are] based on related legal theories," it is "difficult to divide the hours expended on a claim-by-claim basis," and "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992), quoting Hensley, 461 U.S. at 436. If a plaintiff achieves only limited or partial success, an award may be reduced. Hensley, 461 U.S. at 436. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id.

In this case, plaintiffs prevailed as to virtually all aspects of their case. The central aim of the litigation was to establish the unlawfulness of the management's practice at 88 Palace of sharing in the so-called "service charge" imposed on banquets. It is true that plaintiffs voluntarily dismissed one defendant, and failed to show that another shared liability for the damages plaintiffs incurred. These facts, however, had no effect on the total amount of damages awarded to plaintiffs; nor did it undermine their victory on the central legal issue in this case. "So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (internal quotation marks omitted). Accordingly, the fees will not be reduced because of plaintiffs' failure to establish liability that two peripheral defendants shared in the liability.

The presumptively reasonable fee award is indeed reasonable in this case. Although the award is greater than the damages actually recovered by plaintiffs, that fact illustrates the

wisdom of a fee-shifting statute that accounts for and rewards pro bono representation, because unprofitability is a significant disincentive for most attorneys to take cases like this one.  The Supreme Court, affirming an award of attorneys' fees that substantially exceeded plaintiffs' recovery, has emphasized that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."  City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).  "Thus a civil rights plaintiff may obtain important equitable or declaratory relief, or some other non-monetary vindication of his or her civil rights, by, for example, establishing the violation of an important constitutional right.  These non-monetary measures of success must be considered as well in setting the amount of a fee award."  Morris, 343 F. Supp. 2d at 246.  In this case, many of the defendants purported to believe that their unlawful practices, which they represented to be common in the industry, were perfectly acceptable.  Establishing otherwise was precisely the kind of "important social benefit" to which the Supreme Court referred in Riverside.  Plaintiffs' failure to prevail on the question of whether Gong Gui Guan, the shrimp-cart attendant, shared liability was more than offset by their victory on the questions of liability and the social benefit conferred by the vindication of their main legal theory.  Indeed, even considering only the tangible benefits to plaintiffs, the achievement of a judgment against the clearly more prosperous restaurant owners was vastly more important than the failure to attach liability to defendants who could probably not have contributed much to the payment of damages.  Finally, only a minuscule amount of trial time dealt with the particular liability of these two marginal defendants.  The presumptively reasonable fee award will therefore not be reduced.

E.   **Defendants' Allegations of Bad Faith**

Defendants argue that plaintiffs should receive no attorneys' fees for work performed after December 18, 2004, because on that date plaintiffs ceased negotiating in good faith toward settlement of the case. (D. Mem. 4-10.)

Attorneys' fees should not be reduced as a consequences of the rejection of settlement offers "[a]bsent a showing of bad faith," Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992). Aside from the fact that plaintiffs rejected an offer of $210,000, which defendants argue was reasonable (D. Mem. 8),[3] defendants' only basis for asserting bad faith is their claim that plaintiffs' counsel inappropriately raised the possibility of criminal liability for the defendants' apparent failure to accurately report their income to the relevant tax authorities. Defendants cite the case of Realuyo v. Diaz, No. 98 Civ. 7684, 2006 WL 695683 (S.D.N.Y. Mar. 17, 2006), for the proposition that the concept of good faith "encompasses, among other things . . . the absence of a design to defraud or to seek an unconscionable advantage." Id. at *7 (internal citations and quotation marks omitted).[4]

Defendants allege that plaintiffs' counsel, in the course of engaging in settlement

---

[3] The rejection of the $210,000 offer is not an adequate basis for a finding of bad faith. Although defendants argue that the "actual damages" sought by plaintiffs at that time amounted to $217,000, plaintiffs were of course seeking liquidated damages as well, and had accumulated substantial attorneys' fees for which they were entitled to seek compensation under the law. In any event, "[a] district court should not rely on . . . hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded." Ortiz v. Regan, 980 F.2d at 140. And if the Court *were* to look to hindsight, it is noteworthy that the plaintiffs achieved significantly greater benefits at trial than the amount offered in settlement.

[4] The abstract principle quoted from Realuyo is unexceptionable, but the actual holding of the case, which dealt with the elements of a claim for quantum meruit recovery under New York contracts law, id., has little or no applicability to the issue before this Court.

14

discussions, pointed out that defendants had an interest in avoiding trial because of their potential criminal exposure. They argue that this constitutes a violation of New York Disciplinary Rule 7-105(A), which provides that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." It is not at all clear that plaintiffs' counsel violated this rule; while the mere mention of potential criminal liability can constitute a threat under this provision, such a threat only violates the provision if it is "*solely* to obtain an advantage in a civil matter." (emphasis added). See NY State Bar. Assoc. Comm. on Prof. Ethics, Eth. Op. 772, 2003 WL 23099784, at *7-*8 (Nov. 14, 2003). Thus, plaintiffs' counsel did not violate the rule unless he believed his *mentioning* criminal liability could itself bring about some advantage, which seems unlikely; the risk of criminal liability would have been so obvious to defense counsel that plaintiffs' counsel's reference to it would probably not have been an effective way of ratcheting up the pressure for settlement. Nothing indicates that plaintiffs' counsel threatened to take any action to bring defendants' apparent tax evasion to the attention of the relevant authorities, which is generally the sort of "threat" with which the ethical rule is concerned. Id.

      The ethical question defendants raise is a fact-intensive one, id., and the facts adduced by defendants are an insufficient basis on which to resolve it. Defendants are, of course, free to raise whatever ethical complaints they see fit with the relevant disciplinary authorities; the question before this Court is only whether plaintiffs' counsel acted in bad faith while attempting to negotiate a settlement of the case. Even if plaintiffs' counsel crossed an ethical line by pointing out that defendants' apparently massive and systematic violations of criminal tax laws

gave them a good reason to settle the case rather than proceed to trial — a fairly obvious point upon which the Court itself remarked at trial — this hardly indicates that plaintiffs were not engaged in a good-faith effort to settle the case.

The ethical question is separate from the question of whether plaintiffs genuinely sought a settlement. Attorneys' fees should not be reduced as a consequences of the rejection of settlement offers "[a]bsent a showing of bad faith," Ortiz, 980 F.2d at 141, and defendants have not shown that plaintiffs' desire to reach a settlement was anything less than genuine. Indeed, the fact that plaintiffs did reach a settlement with the prior owners and managers of the restaurant — and did so nearly two years after these defendants argue that they ceased negotiating in good faith — strongly suggests that their desire to reach a settlement was genuine. Accordingly, the fee award will not be reduced on the grounds of bad faith.

  F. **Costs**

Defendants do not challenge plaintiffs' calculation or documentation of costs. The Court having reviewed the plaintiffs' submissions and found them reasonable and adequately documented (see Cheffo Aff. Ex. C), costs will be awarded in the amount of $59,732.54.

**II.** **Prejudgment Interest**

The parties agree that plaintiffs may recover prejudgment interest on the damages awarded for withheld tips, spread-of-hours violations, and uniform expenses. Defendants argue, however, that plaintiffs may not recover prejudgment interest on the minimum wage (i.e., "tip credit damages") and overtime awards because those awards were made under the federal FLSA. "It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment

interest may not be awarded in addition to liquidated damages." Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988).

Plaintiffs correctly point out, however, that the minimum wage award — that is, the compensation for the unlawfully taken tip credit — was granted pursuant to both the federal FLSA and relevant state law. See Chan, 2007 WL 313483, at *25 (noting that compensatory damages for unlawful tip credits were to be awarded "at the applicable New York minimum wage" for all hours where New York's minimum was higher than the federal minimum). The same was true of the overtime award. Id. Prejudgment interest may be awarded on state claims pursuant to N.Y. C.P.L.R. § 5001 even where liability is also found under the FLSA. See Yang, 427 F. Supp. 2d at 342. Defendants' objections to prejudgment interest on these claims are without merit.

Defendants also argue that prejudgment interest may not be awarded on the liquidated damages recovered in this case, which amounted to $326,885.63 in liquidated damages under the FLSA, and $9,120.61 in liquidated damages under New York law. Chan, 2007 WL 313483, at *29. "It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages," because "[a]mong other purposes, liquidated damages compensate for the delay in receiving wages that should have been paid." Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988). Thus, prejudgment interest will not be awarded insofar as the damages awarded are for violations of the FLSA.

As to the claim for prejudgment interest on under New York state law, however, the Second Circuit has held that "[p]re-judgment interest and liquidated damages under the Labor

Law are not functional equivalents," because "liquidated damages under the Labor Law constitute a penalty" to deter willful violations of the law. Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 265 (2d Cir. 1999). Thus, the court ruled that prejudgment interest and liquidated damages may both be awarded pursuant to New York law. Id. It did not rule, however, that prejudgment interest *on* liquidated damages was appropriate; nor have plaintiffs cited any authority under which prejudgment interest on liquidated damages may be awarded.[5]

Accordingly, while the plaintiffs may recover prejudgment interest on the compensatory damages awarded (because, as noted above, those damages were awarded under New York law as well as the FLSA), no prejudgment interest on the liquidated damages will be awarded. Defendants do not challenge the calculation method proposed by plaintiffs (see P. Mem. 19), which is a reasonable one[6]; accordingly, prejudgment interest in the amount of $83,205.72 will be awarded.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorneys' fees, costs, and prejudgment interest is granted. The Court awards $957,710.00 in attorneys' fees, $59,732.54 in costs, and $83,205.72 in prejudgment interest, as calculated above.

---

[5] Nor is it clear how prejudgment interest on liquidated damages could meaningfully be calculated. Prejudgment interest is to be computed from the date damages were incurred. N.Y. C.P.L.R. § 5001(b) ("[w]here ... damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date"). Liquidated damages, of course, are not "incurred" by plaintiffs, any more than punitive damages are incurred; rather, under New York law, they are imposed by the Court as a penalty.

[6] Plaintiffs have helpfully proposed alternate interest calculations, one of which is based on both liquidated and compensatory damages, and one of which is based on compensatory damages only. The Court adopts the latter calculation.

SO ORDERED.

Dated: New York, New York
       May 8, 2007

                                                                 GERARD E. LYNCH
                                                           United States District Judge